NORTHTOWN WAREHOUSE AND TRANSPORTATION COMPANY, INC., *et al.*, Plaintiffs-Appellees, v. TRANSAMERICA INSURANCE COMPANY *et al.*, Defendants-Appellants.

First District (5th Division)   No. 83—0986

Opinion filed April 10, 1987.

Anthony J. Tunney, of Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers, of counsel), for appellant Transamerica Insurance Company.

Garbutt & Jacobson Associate, of Chicago (John P. McGahey and Edward J. Berman, of counsel), for appellant I.I.A., Inc.

B. John Mix, Jr., of Chicago, for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Defendants Transamerica Insurance Company and I.I.A., Inc., appeal from a judgment in the amount of $287,428 entered in favor of the Northtown Warehouse and Transportation Company, Inc., and Harry Newberger. Plaintiffs brought this action against I.I.A., an insurance agency, and Transamerica for failure to replace a certain policy of insurance with a duplicate policy. This cause is before us upon remand by the Illinois Supreme Court (*Northtown Warehouse and Transportation Co. v. Transamerica Insurance Co.* (1986), 111 Ill. 2d 532, 490 N.E.2d 1268), that court having reversed our determination that the matter should be dismissed for lack of jurisdiction (*Northtown Warehouse Transportation Co. v. Transamerica Insurance Co.* (1984), 131 Ill. App. 3d 274, 475 N.E.2d 901).

On appeal Transamerica contends: (1) it was not liable because the evidence established that I.I.A. was acting as plaintiffs' agent when I.I.A. obtained the faulty replacement policy; (2) the trial court erred in instructing the jury. I.I.A. contends: (3) the evidence failed to establish a contract; (4) the court should have directed a verdict for defendants at the close of plaintiff's case because no evidence of depreciation, an element of damages, was presented; (5) the court abused its discretion in allowing the complaint to be amended by the addition of Newberger as a plaintiff after the plaintiff Northtown had rested; (6) the court erred in instructing the jury; (7) it was error to bar admission of an appraiser's report; (8) the court should have excluded certain evidence concerning a repair estimate; (9) the court should have granted a mistrial when plaintiff's counsel mentioned that an I.I.A. witness was hired by an insurance company.

We affirm.

The plaintiffs' contention at trial was that I.I.A., acting through its president Kenneth M. Dickerson, had agreed to replace an insurance policy on plaintiffs' warehouse with a duplicate policy at a lower price. Plaintiffs also contended that at that time Dickerson was acting as an agent for Transamerica as well as a paid insurance advisor to plaintiffs. It is undisputed that when a heavy snow caused the warehouse roof to collapse it was determined that the new policy did not cover this damage whereas the old policy would have done so.

At trial the following pertinent evidence was adduced. Kenneth Dickerson, who was initially called as an adverse witness by plaintiff Northtown, testified that he had been an insurance agent for 27

years. He was a licensed broker and was also licensed to act as an agent. At the time in question, in addition to owning and operating his insurance brokerage firm, I.I.A., Dickerson had contracts as a licensed agent with Providence Washington and with Transamerica. However, his business card identified him only as an "Independent Insurance Advisor."

Dickerson testified that being a licensed agent for a company allowed him to deal directly with that company. A broker would have to deal with a company agent, splitting any commission with him. As a broker he solicited insurance business from the general public without instruction from Transamerica concerning whom to solicit. However Dickerson also testified that he had a sales quota with Transamerica and that failure to meet it could jeopardize his contract with the company. He stated further that 50% of his business was with other companies because he had not had his own companies long enough to switch all the business to those companies. According to Dickerson, when placing business he always tried Transamerica first.

Dickerson's relationship with Harry Newberger began when Newberger purchased the Clark Bus Company. Dickerson had obtained insurance coverage for that company under prior ownership. Newberger then allowed Dickerson to obtain coverage for the company. Dickerson testified that because his companies would not write the coverage, he had to "broker" it through another company's agent.

Subsequently Dickerson and Newberger agreed that Dickerson would be paid to advise Newberger on his insurance needs. Dickerson testified that he would receive compensation from Newberger for this advice but would also receive compensation from Transamerica for business supplied to them.

At the beginning of 1978 Dickerson determined that the premiums paid by Northtown on the warehouse insurance with Firemen's Fund were "rather high." He asked Newberger to switch that insurance to Transamerica, telling him he could get the same coverage for less money. However at trial Dickerson testified that he in fact had not then known what the coverage was because he did not have all of that insurance file.

Dickerson testified that the Northtown coverage was the first business Newberger gave him that he could place with Transamerica. He concluded that at least one other company would have had lower rates, but he chose Transamerica for three reasons: he would not have to split the commission with another agent; if a problem arose he would be able to deal directly with Transamerica because he was their

agent; and he had a quota to meet with Transamerica. Dickerson also testified that when he discussed this matter with Newberger he was acting as an agent of Transamerica.

Dickerson admitted that when he obtained the Transamerica policy he did not ascertain whether it provided the same coverage. Only after the warehouse roof collapsed did he discover that the new policy was a "peril policy" which did not cover the occurrence. The Fireman's Fund policy, which had been written on an "all-risk basis" would have covered the claim.

Harry Newberger testified that he purchased the property at issue in his own name in October 1974. He owned all the stock in Northtown, which he had formed to operate that property.

Early in 1978 Dickerson came to Newberger and told him he could save money for him on Northtown's insurance. Although Dickerson said he had already seen the Firemen's Fund policy, Newberger had him get it again. After Dickerson received it, he told Newberger he knew what it covered. According to Newberger, Dickerson told him he could replace the policy exactly and still save him money. Newberger told him to do so. Newberger testified that Dickerson never mentioned Transamerica and he did not learn that the insurance was placed with them until after the roof collapsed. According to Newberger although the new policy had been in his company's possession since mid-1978, he never read it and had simply relied on Dickerson to duplicate the other policy.

After the roof collapsed (on January 24, 1979), Transamerica denied coverage. Newberger held a meeting attended by Joanne Stang, his secretary, Al Drucker, an employee, and Dickerson. At the meeting Dickerson admitted he had erred by failing to obtain the same coverage as the prior policy. Joanne Stang also testified that at the meeting Dickerson admitted omitting "important coverage" on the new policy.

Newberger further testified that he had paid Dickerson to examine his insurance policies and try to save him money. In 1978 he gave Dickerson a 1976 Lincoln Continental Mark IV as payment for a $10,000 bill submitted by Dickerson. In 1979 he agreed to pay a $5,000 bill submitted by Dickerson.

In addition to this testimony, the parties also adduced testimony from a number of witnesses concerning damages. That testimony will be addressed where pertinent to our analysis of the defendants' contentions on appeal. At the conclusion of the trial the jury returned a verdict in favor of plaintiffs and against both defendants in the amount of $287,428 and judgment was entered on that verdict.

OPINION

We find no merit to Transamerica's contention that the evidence established that I.I.A. was acting only as the agent of the plaintiffs in this transaction.

■■ ■ Citing to *Lynn v. Village of West City* (1976), 36 Ill. App. 3d 561, 345 N.E.2d 172, plaintiffs list four factors used by that court in determining whether a person is acting as a broker (representing the insured) or as an agent (representing the insurer): who first set him in motion, who could control his actions, who was to pay him, and whose interest he was there to protect. But the court in *Lynn* also cited other factors pertinent to this inquiry: an agent's fixed and permanent relationship to the company he represents, conduct inconsistent with an agency relationship with a client, whether the client first approached the person, and whether the person dealt directly with the insurance company. In this cause examination of these factors clearly establishes that I.I.A. was acting as Transamerica's agent in the transaction at issue. I.I.A.'s president, Kenneth Dickerson, admitted that at the time in question he had an agency contract with Transamerica. That contract gave I.I.A. the following authority:

> "[T]o solicit *** such contracts of insurance *** as the Company is licensed to write, to collect premiums thereon and to perform such other acts as are incidental thereto.
>
> * * *
>
> [T]o accept, bind and issue insurance policies for those classes of business which the Company is licensed to write, subject to written instructions and dollar limitations that may be provided to the Agent by the Company from time to time ***."

Thus I.I.A. clearly had a fixed and permanent relationship with Transamerica. Through Kenneth Dickerson, I.I.A. dealt directly with Transamerica and I.I.A. first approached Newberger in soliciting this insurance business. In obtaining this insurance business for Transamerica, it is undisputed that I.I.A. was acting within the authorization of its agency contract with Transamerica. Furthermore, Dickerson's stated reasons for selecting coverage with Transamerica all involved his agency relationship with that company: receiving a full commission, being able to deal directly with Transamerica, and meeting Transamerica's quota. In considering the factor of whose interest the agent was protecting, it is noteworthy that Dickerson admitted that he obtained coverage from Transamerica even though at least

one other company had cheaper rates, clearly an action which could reasonably be construed as contrary to the interests of the plaintiffs. All of this evidence amply supported the jury's conclusion that I.I.A. was acting as Transamerica's agent in obtaining this insurance.

### 2

We also find no merit to Transamerica's contentions concerning alleged jury instruction errors. Transamerica first contends the court erred in giving plaintiffs' instructions Nos, 1, 4, 5, and 6, which refer to the issue of whether I.I.A. was acting as agent of Transamerica "at the time of the incident in question." Transamerica contends the court should have given its instructions Nos. 10 and 16, which phrased the issue of whether I.I.A. was acting as Transamerica's agent "for the procurement of a policy of insurance" for plaintiffs.

The reference in the plaintiffs' instructions to agency "at the time of the incident in question" adequately informed the jury that they were to consider agency in the context of the transaction at issue. Any doubt in this regard is resolved by the fact that Transamerica's own burden of proof instruction, which was given, informed the jury that plaintiffs had the burden of proving that I.I.A. "was acting as the agent of Transamerica Insurance Company for the procurement of the policy of insurance for [plaintiffs]." Because the instructions, taken as a whole, adequately instructed the jury on the point, we find no error in the trial court's ruling. *Jensen v. Chicago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915, 419 N.E.2d 578.

Transamerica also contends that by refusing to give its instructions Nos. 11, 14, and 15, concerning the characteristics of agents and brokers, the court left the jury without guidance as to the meanings of those terms. In fact the jury was instructed on those terms and Transamerica has not contended that those instructions were erroneous. Furthermore, instruction No. 11 concerned only an agent's fixed and permanent relation to his company as contrasted with a broker's lack of such a relationship. Instructions which single out and give prominence to one fact while ignoring other equally relevant facts should not be given. *Handell v. Chicago Transit Authority* (1961), 30 Ill. App. 2d 1, 173 N.E.2d 529.

Instruction No. 14 provided:

> "Whether a person is an insurance agent or a broker is determined by his acts and is dependent upon who controls his movements, who pays him and whose interest he represents."

Instruction No. 15 provided:

> "It is a person's conduct, rather than his title, which is determinative of whether he serves as the agent of an insurance company or as the broker for an applicant for insurance in any particular transaction."

It would appear from the record that part of the argument concerning these instructions was made off the record. To this extent Transamerica has failed in its obligation to provide this court with an adequate record for review. In any event we would note that instructions Nos. 14 and 15, taken together, suggest that conduct alone is relevant to whether one is acting as an agent or broker. Yet the very cases cited by Transamerica for this proposition demonstrate that factors other than conduct may also be relevant. In *Roby v. Decatur Steel Erectors, Inc.* (1978), 59 Ill. App. 3d 720, 375 N.E.2d 1355, *Lynn v. Village of West City* (1976), 36 Ill. App. 3d 561, 345 N.E.2d 172, and *Moone v. Commercial Casualty Insurance Co.* (1953), 350 Ill. App. 328, 112 N.E.2d 626, all cited by Transamerica, the courts cited as relevant the additional factors of who set the person in motion and who could control his actions. In this cause the agreements that I.I.A. and Dickerson had with Northtown and Transamerica were relevant to these factors and tended to help explain I.I.A.'s actions. Thus these instructions were properly refused as too limited in scope.

### 3

Defendant I.I.A. contends that there was insufficient evidence of a contract between its president, Dickerson, and Harry Newberger. Specifically, I.I.A. contends there was no agreement on the period, amount, rate, and type of insurance. This contention is meritless. Newberger testified that Dickerson agreed to provide the same coverage then provided by the Firemen's Fund policy, which Dickerson told Newberger he had read. Subsequently Northtown received invoices for the new policy, which specified not only the rate but the period of the policy.

### 4

■ I.I.A. next contends that the court erred in failing to enter a directed verdict for defendants at the close of plaintiffs' case based on plaintiffs' alleged failure to present any evidence concerning depreciation to the warehouse, an essential element of damages. We need not determine whether in fact plaintiffs had the burden of establishing any depreciation, for I.I.A. concedes that evidence on this

issue was subsequently presented by defendants and in rebuttal. Defendants thus waived any error based on the denial of their motion by subsequently introducing evidence on the issue. *Miller v. Racine Trust* (1978), 65 Ill. App. 3d 207, 382 N.E.2d 41.

5

At the close of plaintiff Northtown's case, the defendants moved for a directed verdict on the ground that Northtown had failed to establish that it had suffered any loss because it did not own the property in question. The trial court suggested that Newberger be made a party plaintiff to conform to the proof. Northtown was then permitted to amend its complaint accordingly over the objections of the defendants.

Although I.I.A. contends that this was error, it has failed to demonstrate any prejudice arising from this action. Harry Newberger had testified that he purchased the property and then incorporated Northtown, wholly owned by him, to manage the warehouse. The decision to allow Northtown to amend its complaint was within the court's discretion (*Kupianen v. Graham* (1982), 107 Ill. App. 3d 373, 437 N.E.2d 774), and we find no abuse of that discretion here.

6

We find no merit to I.I.A.'s contention of error in the jury instructions. Thus although I.I.A. complains of the court's failure to give instructions permitting separate verdicts for the two plaintiffs, I.I.A. fails to recognize that the interests of these two parties were identical. Plaintiff Newberger owned 100% of plaintiff Northtown's stock. I.I.A. further contends the court should have instructed the jury on a theory that I.I.A. was the disclosed agent of Transamerica, thus eliminating Transamerica's liability. But there was no evidence in the record that Dickerson ever disclosed his agency contract to plaintiffs. Finally I.I.A. contends that the court should have instructed the jury on the negative inference to be drawn from a party's failure to produce a witness within that party's control. The witness at issue, Albert Drucker, was in fact present in court and by I.I.A.'s admission was no longer employed by plaintiffs. Clearly he was equally available to both parties and the instruction was properly refused. See *Weatherell v. Matson* (1977), 52 Ill. App. 3d 314, 367 N.E.2d 472.

7 and 8

We do not reach the merits of I.I.A.'s contentions of error

relating to evidence concerning damages. I.I.A. has not contended that the damages actually awarded were excessive and thus has waived its contentions of error concerning that evidence. *Probus v. Brown* (1975), 33 Ill. App. 3d 639, 338 N.E.2d 231.

9

▮▮ I.I.A.'s final contention is that a mistrial should have been granted when plaintiffs' counsel, on cross-examination of an appraiser, referred to a previous expert witness as "an insurance evaluation man hired by the insurance company." The trial court immediately sustained an objection to this question. Counsel then rephrased the question to refer to the witness as one "who is hired by insurance companies to represent [their] interests." There was no objection to this question, nor would such an objection have been sustained, for that expert witness had testified on direct examination by I.I.A.'s counsel that he worked for the insurance industry and specifically listed insurance companies which had employed him. Under these circumstances we find no prejudice arising from these questions.

The judgment of the trial court is affirmed.

Affirmed.

SULLIVAN, P.J., and PINCHAM, J., concur.