THE PEOPLE *ex rel.* PAMELA WEST, Petitioner-Appellee, v. JOSHUA HERRENDORF, Respondent-Appellant.

First District (4th Division)   No. 1—87—3808

Opinion filed August 17, 1989.

McMORROW, J., dissenting.

Brian M. Collins, of MaGee, Collins & Lodge, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Caroline Metter Shoenberger and Leonard N. Foster, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County denying the motion of respondent, Joshua Herrendorf, for sanctions against petitioner, Pamela West, and her counsel, the State's Attorney, pursuant to section 2—611 of the Illinois Code of Civil Procedure (Code) (Ill. Rev. Stat. 1985, ch. 110, par. 2—611). The

sole issue presented for review is whether the trial court erred in denying Herrendorf's motion for the imposition of sanctions and costs pursuant to section 2—611 of the Code.

We affirm.

On February 1, 1985, West signed a complaint naming Herrendorf as the father of her child, Lauren L. West. Lauren was born July 4, 1983. The complaint was filed by the State's Attorney on June 10, 1985. Herrendorf was served by alias summons on February 27, 1986.

In response to interrogatories filed by Herrendorf on April 28, 1986, West also named Anthony Lazzaroni as a person with whom she had had sexual relations within 60 days of the date of conception. West stated that the date of conception was September 1979. The date was later amended to September 1982 in West's supplemental interrogatories.

On February 10, 1987, West filed a "Motion to Compel Blood Tests" to which Herrendorf objected. The court ordered that he take the blood tests. On that same day the State's Attorney was granted leave to file an amended complaint alleging that Anthony Lazzaroni or Glen Udell could be the father of the child. Separate suits, however, had to be filed against these two defendants as the clerk of the court's record system could not accommodate multiple defendants.

West filed supplemental responses to interrogatories on March 9, 1987, in which she stated that she had had sexual intercourse with Udell on either October 3 or 10, and with Lazzaroni on October 18 and 19, 1982.

At West's deposition, she testified that the reason she could not name Lazzaroni or Udell in the initial complaint was because personnel from the Illinois Department of Public Aid and someone from the State's Attorney's office advised her that she could not name three individuals as potential fathers in a paternity suit. West also testified that she believed Herrendorf was the father of her child because she felt that she had conceived on September 19, 1982.

On March 11, 1987, the suit against Herrendorf was voluntarily dismissed after he was excluded as a potential father by the blood test. Udell was also scientifically excluded as a possible father. The suit against Lazzaroni is still pending as his blood test resulted in a paternity index.

On March 7, 1987, Herrendorf filed a motion for costs, pursuant to section 2—611. Herrendorf alleged that West pleaded statements which she and the State's Attorney knew or reasonably should have known were untrue. West alleged that Herrendorf was the father which she knew or reasonably should have known was untrue. Her-

rendorf also argued that the amended section 2—611 (Ill. Rev. Stat. 1987, ch. 110, par. 2—611) should apply retroactively to West's complaint which would allow the imposition of sanctions against both West and the State's Attorney. The trial court denied Herrendorf's motion for sanctions. In so holding, the trial court also refused to apply the amended section retroactively. It is from this decision that Herrendorf appeals.

Section 2—611 provided, in pertinent part, as follows:

"Allegations and denials, made without reasonable cause and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court upon motion made within 30 days of the judgment or dismissal." (Ill. Rev. Stat. 1985, ch. 110, par. 2—611.)

In November 1986, the section was amended, rendering its scope broader than the prior version. (*Mucklow v. John Marshall Law School* (1988), 176 Ill. App. 3d 886, 897.) The amended section reaches every document filed with the court and requires the motions or pleadings be supported by "reasonable inquiry." (Ill. Rev. Stat. 1987, ch. 110, par. 2—611.) It also provides for the imposition of sanctions against the attorney whose signature appears on the pleadings or motions as well as the party being represented.

Herrendorf first contends that the amended section should be applied retroactively to the complaint filed on June 10, 1985, naming him as the father of the child. Application of the amendment would permit sanctions against the State's Attorney as well as West. We do not believe that the amended section should be applied retroactively.

The Illinois Supreme Court in *Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, stated the general rule with respect to the retroactive application of statutes:

"When a change of law merely affects the remedy or law of procedure, all rights of action will be enforceable under the new procedure *** without regard to whether or not the action has been instituted, unless there is a saving clause as to existing litigation. [Citations.] Changes in procedure or existing remedies will not be applied retrospectively, however, where a vested, constitutionally protected right will be deprived by such application." (*Maiter*, 82 Ill. 2d at 390-91.)

The amended section 2—611 does not merely affect the remedy or existing procedure of law but creates an obligation which did not previously exist. *Ignarski v. Heublein* (1988), 171 Ill. App. 3d 830, 835.

Herrendorf's reliance on *People v. Frieder* (1980), 90 Ill. App. 3d 116, is misplaced. In *Frieder*, the court held that an amendment to the predecessor statute (Ill. Rev. Stat. 1975, ch. 110, par. 41) of section 2—611 must be given retroactive effect. The court, however, was only concerned with the new burden of proof the amendment imposed. (*Frieder*, 90 Ill. App. 3d at 120.) The amendment considered in *Frieder* did not impose new obligations and liabilities but merely changed existing remedies. *Board of Education v. Illinois State Board of Education* (1984), 122 Ill. App. 3d 471, 475-76.

In the instant case, this amended section imposes new obligations rather than adding a remedy for alleged violations. (*Ignarski v. Heublein* (1988), 171 Ill. App. 3d 830, 835.) We, therefore, find that the amended section should not be given retroactive effect.

Even assuming, *arguendo*, that the amended section 2—611 is applied to the facts in this case, we find that the State and West were still within the purview of the statute. The former section 2—611 provided that the pleadings should be based on "reasonable cause." Similarly, the amended section requires that the filing must be "well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Ill. Rev. Stat. 1987, ch. 110, par. 2—611.

Prior to the time West received the results of the paternity test, it was a question of fact as to whether Herrendorf was the child's natural father. Once the results determined that Herrendorf was not the father of the child, the lawsuit against him was no longer well grounded in fact and was immediately dismissed against him. Under either version of the statute, therefore, we find that West and the State were within its scope. We will, however, address Herrendorf's various contentions.

Herrendorf maintains that he is entitled to fees. Fees may be assessed against a litigant pleading false statements without reasonable basis under the section prior to the 1986 amendment. (*People ex rel. Reliford v. Roberts* (1983), 112 Ill. App. 3d 351, 353.) Since the section is of a penal nature, its terms will only be invoked where all of the allegations may be construed as falling strictly within the terms of the provision. (*Mucklow*, 176 Ill. App. 3d at 897.) The trial court's decision assessing fees is entitled to great weight and will not be disturbed unless there has been an abuse of discretion. *Wollschlager v. Sundstrand Corp.* (1986), 143 Ill. App. 3d 347, 352.

Herrendorf asserts that the trial court erred in denying his motion for sanctions because, he alleges, West and two assistant State's Attorneys knew prior to West's filing the complaint that he was not

the father of her child.

■■ Herrendorf bases this assertion on several factors: (1) according to medical records the "father" of the child was present at the hospital prior to, at the time of, and subsequent to the birth of the child and Herrendorf alleges that he was never at the hospital; (2) West told personnel at the Illinois Department of Public Aid and two assistant State's Attorneys that there were three potential fathers prior to filing the original complaint; and (3) West stated that she had had intercourse with Herrendorf on September 16 and 19, 1982, and the child was born July 4, 1983, approximately 2 weeks longer than the usual nine-month gestation period.

The first factor raised by Herrendorf, that according to hospital records, the "father" was present at the hospital, cannot be a basis for sanctions against West. Herrendorf neglects to point out that nowhere in the records is this "father" named or identified. Simply because a hospital record states that the "father" was at the hospital does not mean that the party at the hospital was the child's natural father. Further, at that time, West did not know who was the child's father. The father's identity, in fact, is still at issue. We do not find an unsubstantiated notation on a hospital record an adequate basis for sanctions against West.

■■ ■ Herrendorf next argues that West knew of three potential fathers prior to filing her complaint. Two of these parties were not named in the initial complaint. The Paternity Act (now repealed) provided, in pertinent part, that "[t]he complainant, under oath or affirmation, shall accuse a person of being the father of such child." (Ill. Rev. Stat. 1983, ch. 40, par. 1354.) According to the State's Attorney, courts and administrative agencies construed this section as prohibiting a complainant from filing against multiple defendants. Further, West testified that she was informed by someone from the Illinois Department of Public Aid, when she went for her initial intake interview, that she could only file against one party. West also testified that she felt she had conceived when she had intercourse with Herrendorf on September 19.

West correctly points out that in order to determine the truth of a paternity claim a blood test must be taken. (*People ex rel. Reliford v. Roberts* (1983), 112 Ill. App. 3d 351, 354.) However, "[t]he State certainly could not compel defendant to submit to a blood test without invoking the authority of a court, and the State could invoke this authority only by filing suit." (*Reliford*, 112 Ill. App. 3d at 354.) West, therefore, appropriately filed a motion to compel the blood tests to determine whether Herrendorf was the father of her child. After results

indicated that Herrendorf was not the father, the suit against him was voluntarily dismissed.

■ Herrendorf further complains that the motion to compel the blood tests was not made until almost two years after the suit was filed. Thus, he contends that he was subject to almost two years of unnecessary legal fees and anguish. This, however, cannot be a basis for sanctions in the instant case. As the trial court noted, Herrendorf could have taken a blood test to show an exclusion as soon as the complaint was filed instead of objecting to West's motion. Herrendorf's argument for sanctions based on this contention also fails.

■ ■ Finally, Herrendorf argues that West knew that he was not the father since she had intercourse with Lazzaroni, without the benefit of contraception, within three or four days of the identified date of conception. The child was born July 4, 1983. West testified that she believed that she conceived when she had intercourse with Herrendorf on September 19, 1982, and that the birth control device that she was wearing may have been ill-fitting. Herrendorf contends that since birth occurred more than nine months after she had intercourse with him, compounded by the fact that her physician advised her that the date of conception was in October, is sufficient to prove that she had knowledge that he could not have been the father. We do not find that this argument serves as a basis for sanctions.

As the trial court correctly pointed out, West actually believed she conceived on September 19. It is not an abuse of discretion to deny attorney fees where, even if the statement is false, the plaintiff, nonetheless, has reason to believe that the statement was true. (*In re Marriage of Passiales* (1986), 144 Ill. App. 3d 629, 638.) Obstetrics is not an exact science. Physicians may not in all cases predict the exact day of conception. It is also not unusual for birth to occur either before or after the nine-month period. We find that the trial court did not abuse its discretion in finding that West and her attorney acted within the purview of the section.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

JIGANTI, P.J., concurs.

JUSTICE McMORROW, dissenting:
I respectfully dissent because the record indicates that the trial court failed to apply the proper standards in ruling on defendant's

motion for sanctions under section 2—611. The motion alleged, and the record discloses, several untruthful, incomplete and misleading statements of fact and law made by plaintiff and her attorney and the possible existence of an improper motivation for pursuing, for nearly two years, this paternity action against defendant as the only alleged father. Thus, I believe that it was incumbent upon the trial court to apply the proper standards in determining the merits of defendant's motion, and that the court's failure to do so was error warranting reversal and remandment of this cause for a new hearing on the motion.

The amended version of section 2—611, which became effective November 25, 1986, provides in relevant part:

> "Every pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney ***. The signature of an attorney *** constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law *** and that it is not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation ***. *** If a pleading, motion, or other paper is signed in violation of this Section, the court *** shall impose upon the person who signed it, a represented party, or both, an appropriate sanction ***. " Ill. Rev. Stat. 1987, ch. 110, par 2—611.

I agree with the majority that because section 2—611 imposes new obligations and liabilities, it should not be given retroactive effect. (*Prevendar v. Thonn* (1988), 166 Ill. App. 3d 30, 518 N.E.2d 1374; *Ignarski v. Heublein* (1988), 171 Ill. App. 3d 830, 835.) However, the amendment became effective on November 25, 1986, and the record establishes that the prosecution of this action against defendant continued until April 27, 1987, when the order dismissing him on the State's motion for voluntary nonsuit was entered. Thus, a review of the State's Attorney's (hereinafter plaintiff's attorney's or counsel's) conduct after the effective date of the amendment does not constitute improper retroactive application but, rather, proper prospective application of amended section 2—611.

The basis for denying sanctions was, in the trial judge's words, because he did "not believe that either [plaintiff] or [counsel] acted in bad faith within the purview of the Section 6—211 [*sic*]." In my view, this quotation establishes that the trial court did not apply the standards of either amended or preamended section 2—611 to plain-

tiff or her counsel. Rather, the court disposed of defendant's entire motion under a more stringent standard which has been inapplicable since 1976 when the legislature deleted the "bad faith" element (Pub. Act 79—1434, § 8, eff. Sept. 19, 1976) from what was then section 41 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 41).

The preamended version of section 2—611 subjected a party to sanctions where "[a]llegations or denials [were] made without reasonable cause and found to be untrue." (Ill. Rev. Stat. 1985, ch. 110, par. 2—611.) A party requesting an award of fees and costs under former section 2—611 was not required to prove bad faith on the part of the opposing party but rather, merely to show that the opposing party had made untrue pleadings of fact which it knew or reasonably should have known were untrue. *Gluth Brothers Construction, Inc. v. Union National Bank* (1988), 166 Ill. App. 3d 18, 518 N.E.2d 1345.

As amended, section 2—611 extends to every paper filed with the court and subjects an attorney to the same sanctions, to which only the client was previously subject, for violations of its provision. The revised section imposes a duty upon counsel to certify that he has made an objectively reasonable investigation of the underlying facts and law before pleadings or other papers are filed with the court. (*In re Mitan* (1987), 119 Ill. 2d 229, 518 N.E.2d 1000; *People v. King* (1988), 170 Ill. App. 3d 409, 524 N.E.2d 723; Ill. Ann. Stat., ch. 110, par. 2—611, Historical and Practice Notes (Smith-Hurd Supp. 1989).) Thus, as a general rule, an attorney cannot simply rely on the client's verbal representations (*Chicago Title & Trust Co. v. Anderson* (1988), 177 Ill. App. 3d 615, 532 N.E.2d 595), but must objectively review the information submitted by the client to determine its accuracy. If such review reveals important discrepancies, inconsistencies or gaps in the information provided, the attorney must investigate further before filing the legal paper with the court. (*Chicago Title & Trust Co. v. Anderson* (1988), 177 Ill. App. 3d 615, 532 N.E.2d 595.) Although amended section 2—611 is, in substance, a statutory articulation of the already existing duties enunciated in Supreme Court Rule 7—102 (107 Ill. 2d R. 7—102) relating to the ethical responsibilities of an attorney in the representation of a client, it imposes additional obligations and new liabilities upon attorneys and therefore may not be applied retroactively to counsel. At least one court has held, however, that since the obligations of a party under amended section 2—611 remain unchanged, consideration of the defendant's motion for sanctions against *plaintiff* under that section did not con-

stitute improper retroactive application of it. *Prevendar v. Thonn* (1988), 166 Ill. App. 3d 30, 518 N.E.2d 1374.

Because the contentions in defendant's motion relate to both counsel and plaintiff and concern matters occurring both before and after the effective date of amended section 2—611, I cannot agree with the majority's affirmance of the trial court's order summarily denying defendant's motion for sanctions on the basis of an inapplicable "bad faith" standard. Whether plaintiff's omissions and misstatements of fact and counsel's conduct in this case were sanctionable were questions which the trial court could and should have examined under the appropriate standards of section 2—611.

The majority alternatively states that even if amended section 2—611 is applied to the facts of this case, plaintiff and counsel acted within its purview and that sanctions were not warranted under either version of the statute. The majority reasons that until the blood tests were performed, whether defendant was the child's father was a question of fact and, thus, the suit against him was well-grounded in fact; and that once he was excluded by those blood tests, the suit against him was no longer well-grounded in fact and was "immediately dismissed." The majority seems to say that as long as there is some ground for a suit and as long as it is eventually dismissed, nothing that occurs during the course of the litigation is sanctionable. In the instant case, defendant incurred expenses during the approximate two-year period between the time the suit against him was instituted and its dismissal, which may not have been necessary if plaintiff and her counsel had made the reasonable inquiries to determine if the accusation against defendant was well-grounded in fact or warranted by existing law, as mandated by section 2—611.

I do not read either preamended or amended section 2—611 to authorize sanctions *only* where it is determined that the action as originally instituted was baseless. The provisions of both versions of the statute are addressed to conduct during the litigation as well as to the institution of the action. Former section 2—611 refers to *any* allegations and denials made without reasonable cause and found to be untrue. The amended section requires certification that there has been a reasonable inquiry into the allegations and denials contained in *all* papers filed in the case and that they are well-grounded both in fact and existing law.

At the hearing on his motion, defendant argued generally that because plaintiff had sexual relations with at least two other men, *viz.*, Udell and Lazzaroni, during the identified period of conception and admitted knowing when she signed the complaint that it was

possible that any of the men was the father, the naming of only him as the father was conclusionary and improper. Defendant also asserted that several untrue, incomplete and misleading allegations and denials, which will be noted hereafter, were made without reasonable cause or objectively reasonable inquiry during the course of this litigation.

Specifically, with respect to plaintiff, defendant argued that she made several misstatements and omissions of fact which she knew or reasonably should have known were not truthful. For example, in her March 1987 deposition, plaintiff under oath admitted having consciously omitted Udell's name from her answers to defendant's interrogatories seeking the names of *all* persons with whom she had had sexual relations during the relevant period. That deposition reveals plaintiff made other untruthful statements when she acknowledged that she knew at the time she signed the original complaint that it was possible that Lazzaroni was the father and that the dates she had intercourse with him coincided with the physician's estimation of the date of conception, October 15, and with the child's date of birth. In her interrogatory answers, however, she stated that she did not believe that Lazzaroni was the father because the dates of her sexual relations with him did not coincide with the birth of the child. Plaintiff also admitted at her deposition that one of the reasons she named defendant rather than Lazzaroni as the alleged father was because Lazzaroni's mother had threatened her, and that when she tried to speak to Lazzaroni about this matter, he told her in a "very stern manner" never to contact him again.

Plaintiff made other untruthful statements. Plaintiff was asked in the interrogatories to state her blood type and the child's blood type. Her answer to the question was "Don't know." At her deposition, however, plaintiff identified both her blood type and the blood type of her child. Counsel for defendant then asked when she had learned them, to which she responded "I've known all along." Her explanation for withholding the information by falsely answering the interrogatory was that someone in her counsel's office had advised her to state "Don't know" if she did not have documentary proof of her response at hand.

Defendant argued that plaintiff's assertions that she "felt" conception occur during sexual relations with him and that she "believed" that the physician's estimation of October 15 as the date of conception was erroneous were not proper grounds for the paternity action because her conclusions had no scientific or other objectively reasonable basis. The majority disagrees, stating that sanctions are

not warranted "where, even if the statement is false, the plaintiff, nonetheless, has reason to believe that the statement was true." (187 Ill. App. 3d at 784.) Did she "have reason" to believe conception took place when she had sexual relations with defendant because she "felt" conception occur? It is noteworthy that plaintiff's own counsel stated in the August 1987 memorandum in opposition to sanctions and at the November 1987 hearing thereon, that "her *subjective* feelings *** *however farfetched* gave her additional reason to name him" and that "[w]e have never seen any specific justification for such a feeling [of conception], but that is what she said." Counsel also acknowledges on appeal that "there is no known way that [plaintiff] could be aware of [conception]." In my view, counsel's various statements amount to an acknowledgment that her "belief" that she "felt" conception during intercourse with defendant was not an objectively reasonable one.

My review of the record discloses other facts, not addressed by the majority, which I believe are relevant to the question whether plaintiff's allegations and denials were made with "reasonable cause" under former section 2—611 or that "to the best of [her] knowledge, information and belief formed after reasonable inquiry [they] were well grounded in fact and warranted by existing law" under amended section 2—611. For example, according to plaintiff's deposition testimony, she was approximately 30 years old, had completed two years of college and had been pregnant three times before. She stated in her interrogatories that she had used a contraceptive device during intercourse with defendant on September 19, and she acknowledged that she had not used any contraceptive device during sexual relations with Lazzaroni on October 18 and 19. Although, as the majority points out, she testified that the contraceptive device was ill-fitting, she made no such assertion in her answer to the interrogatory asking the reasons for her belief that defendant was the father.

Plaintiff also affirmatively stated, both in her answers to interrogatories and at her deposition, that she had a menstrual period approximately two weeks after engaging in sexual relations with defendant, a fact she was able to recall because it was recorded in the medical records prepared when she underwent a pregnancy test in November 1982. Cases have noted that the occurrence of a menstrual period after a plaintiff's sexual encounter with a defendant is probative evidence tending to contradict plaintiff's assertion that she was impregnated by the defendant. (See, *e.g.*, *In re Estate of Lukas* (1987), 155 Ill. App. 3d 12, 508 N.E.2d 385; *People ex rel. Reynolds*

*v. Aldridge* (1982), 107 Ill. App. 3d 679, 437 N.E.2d 1268.) These facts are contained in the transcript of plaintiff's deposition and, in my opinion, are relevant to the question whether, considering her age and life experiences, plaintiff's allegations and denials were made with "reasonable cause" or after "objectively reasonable inquiry" as required by the respective versions of section 2—611.

Additionally, the majority characterizes as an "unsubstantiated notation" in the hospital records a reference to a person (not the defendant) who accompanied plaintiff to the hospital and was present in the delivery room as "the father" and "the husband." However, it should be noted that plaintiff signed the records in which those characterizations were made and that the existence of such a person came to light only when the records were subpoenaed by defendant.

With regard to the allegedly sanctionable conduct of counsel, defendant argued, *inter alia*, that plaintiff's counsel knew or should have known that his assertions that the law did not permit the naming of more than one person as a defendant in a paternity action were erroneous. Defendant correctly noted that the Parentage Act of 1984, which became effective less than one month after the filing of plaintiff's original complaint, provides that "[t]he complaint [in an action to determine the existence of the father and child relationship] shall be verified and *shall* name the person *or persons* alleged to be the father." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 40, par. 2507.) Plaintiff testified, and counsel did not deny, that she informed counsel prior to the filing of her complaint that she had had sexual relations with three men during the relevant period. Thus, irrespective of whether or not the Paternity Act permitted the naming of more than one alleged father, or "the administrative agencies involved had a firm policy against naming multiple defendants," as plaintiff's counsel maintains, the fact remains that the Parentage Act was amended less than one month after the plaintiff's original complaint was filed and clearly provides that the complaint *shall* name the person or *persons* alleged to be the father. Yet, her counsel took no action to amend the complaint to name the two other possible fathers, Udell and Lazzaroni, until more than 18 months after the effective date of the Parentage Act and approximately three months after the effective date of amended section 2—611. Furthermore, according to plaintiff, her counsel expressly informed her that "it was up to [her] whether [she] wanted to put Udell's name into it." Defendant also pointed out that according to plaintiff, either her counsel or someone in his office advised her to falsely answer "Don't know" to the interrogatory asking for her and the child's blood types.

Defendant argued that plaintiff's counsel knew of the falsity of plaintiff's answer to defendant's interrogatories that defendant and Lazzaroni were the only persons with whom she had sexual relations during the possible period of conception, and the falsity of her answer that the dates of her sexual relations with Lazzaroni did not coincide with the date of the child's birth. Nevertheless, it was not until plaintiff's deposition in March 1987, wherein she admitted various untruths and omissions, that counsel filed supplemental answers to correct those misstatements and supply the omitted information.

The sanctions which for a long period of time have been allowed against parties under the preamended section 2—611 in cases where there has been a failure to correct an offending allegation or denial in papers filed with the court (*Grandys v. Spring Soft Water Conditioning Co.* (1968), 101 Ill. App. 2d 225, 242 N.E.2d 454) are now also permissible against counsel under amended section 2—611. As we noted in *Chicago Title & Trust Co. v. Anderson* (1988), 177 Ill. App. 3d 615, 532 N.E.2d 595, counsel cannot simply remain silent when faced with incorrect or newly discovered information. Rather, once it appears that a prior allegation or denial is erroneous, this must be brought forthrightly to the attention of the court and opposing counsel. (*Chicago Title & Trust Co. v. Anderson* (1988), 177 Ill. App. 3d 615, 532 N.E.2d 595.) Correction was not made in this case until many months after plaintiff's counsel had knowledge of false allegations and denials. Indeed, correction came only after defendant's extensive and time and cost-consuming investigation revealed the false statements made by plaintiff.

Defendant also contended in the trial court and on appeal that statements by plaintiff's counsel in his August 1987 memorandum in opposition to the motion for sanctions and at the November 1987 hearing thereon substantiate his allegation that the primary reason defendant was the only one of the three men named in the original complaint was because he is a financially secure commodities trader whereas Lazzaroni and Udell were both young students. In the statements to which defendant refers, plaintiff's counsel said, "[t]here is no rule or statute that says we have to name all three. There is no rule or statute that says we cannot proceed one at a time. *** Given that [plaintiff] had to proceed against the three one at a time, prudent common sense, not reckless disregard for the truth, dictated that she start with the defendant best able to pay child support." Notwithstanding that counsel's statement of the law was refuted by the Parentage Act of 1984, and that counsel expressly conceded the existence of some financial motivation for plaintiff's naming of only

defendant, the trial court summarily dismissed defendant's allegation stating, "you [defense counsel] reasoned that *** she decided to go after the commodities broker *** because that's what they do in a P.I. case, look for deep pockets? I just throw that out." In my view, this cursory rejection of defendant's contention that his financial status was a motivation for naming him in her paternity complaint supports my conclusion that the trial court abused its discretion when it did not give adequate or appropriate consideration to defendant's motion under either version of section 2—611.

Parenthetically, it should be noted that in reference to the above-quoted remark of the trial court, counsel asserts in his brief on appeal that "[t]he trial judge noted that the 'Deep Pocket Theory' is of longstanding custom [and is] not reprehensible in and of itself." Not only is counsel's assertion itself a misstatement of the court's remark, but the underlying proposition is, in my judgment, legally and ethically questionable, and if true, indicative of a morally impoverished court system.

I also disagree with the majority's reasoning concerning defendant's contention that the litigation was unnecessarily protracted by the conduct of plaintiff and her counsel. In response to arguments by defendant at the hearing, the trial court agreed, and counsel conceded, that the statement in plaintiff's complaint that defendant was the father was improperly conclusionary and that "it would have been better" to name and seek immediate blood tests of all three men. However, the trial court took the position, which the majority adopts, that "defendant could have taken a blood test to show an exclusion as soon as the complaint was filed instead of objecting to plaintiff's motion to compel [blood tests]." Initially, plaintiff signed the complaint against defendant on February 1, 1985. It was not until two years later, February 1987, that plaintiff filed a motion for blood tests. Defendant objected to the blood tests because the information that had been uncovered by that time indicated no reasonable basis to believe he was the father. I fail to see the relevancy of defendant's 1987 objection to the blood tests to the question of whether plaintiff's failure to seek blood tests until two years after she signed the complaint unnecessarily prolonged the litigation.

Moreover, in my view, the position taken by the trial court and the majority constitutes an improper shifting of the burden of proof from plaintiff to defendant. In a paternity action it is the mother who bears the burden of proving paternity by a preponderance of the evidence. (*People ex rel. Barbour v. Hatchett* (1985), 131 Ill. App. 3d 540, 475 N.E.2d 1113. See also *Rivera v. Minnich* (1987), 483 U.S.

574, 97 L. Ed. 2d 473, 107 S. Ct. 3001; Ill. Rev. Stat. 1983, ch. 40, par. 1359.) Although a defendant in a paternity action may request blood tests (Ill. Rev. Stat. 1985, ch. 40, par. 2511(a)), he is not obligated to do so. Furthermore, in the event that he does, under the statute it is he who is required to pay the expenses of the tests (Ill. Rev. Stat. 1985, ch. 40, par. 2511(g) ("[t]he expense of the tests shall be paid by the party who requests the test")).

Defendant's motion for sanctions argued that by naming and continuing the action against him as the sole defendant, rather than the three men with whom she had sexual relations, plaintiff and counsel placed upon him the burden of investigating her allegations and of seeking court orders compelling disclosure of facts which she and counsel failed to investigate, disclose, or admit. Defendant maintained that he was forced to expend significant amounts of time and money to defend an action which was premised largely on allegations and denials which were untruthful, deceitful, incomplete and/or made without reasonable basis or inquiry, and that he was selected as the sole defendant on the basis of his financial status. Since neither plaintiff nor her counsel offered any explanation as to why *they* did not seek an order compelling blood tests until nearly two years after the institution of this action, I cannot agree with the majority's position that defendant's failure to voluntarily submit to and assume the additional expense of a blood test to disprove his paternity should constitute a waiver of his claim for expenses and fees under section 2—611.

In summary, I submit that it was incumbent upon the trial court to consider defendant's various contentions under the applicable standards of section 2—611. In my view, the trial court's failure to do so and its reliance on the inappropriate "bad faith" standard, which has been inapplicable for over a decade, was error warranting reversal and remandment for a new and full hearing on defendant's motion.