DAVID A. MUCKLOW, Plaintiff-Appellant, v. JOHN MARSHALL LAW SCHOOL *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 87—3124

Opinion filed November 23, 1988.

David A. Mucklow, of Chicago, appellant *pro se*.

Melvin B. Lewis, of Chicago, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff David Mucklow appeals from the trial court's award of judgment on the pleadings in favor of defendants John Marshall Law School (Law School) and Charles Padden in plaintiff's action based on breach of contract and tort. On appeal, plaintiff contends the trial court erred in granting judgment on the pleadings and committed further error by entering section 2—611 sanctions against plaintiff. (Ill. Rev. Stat. 1987, ch. 110, par. 2—611.) Plaintiff has suggested the death of Padden, and the appeal proceeds only against the Law School.

On September 16, 1986, plaintiff, a 1986 graduate of John Marshall Law School, filed an eight-count complaint against defendants. Count I was an action alleging breach of contract and count II alleged breach of confidence. These counts claimed that Padden, then a professor at the Law School, wrongfully intercepted the student teacher evaluation written by plaintiff, in which plaintiff made detailed critical comments about Padden. Plaintiff alleged that Padden identified the author of the anonymous evaluation through handwriting sample comparison, and retaliated against plaintiff by giving him a grade of "D."

Count III of the complaint, for invasion of privacy, alleged that Padden, without proper authorization and by falsely misrepresenting his basis to gain access, accessed plaintiff's student record book. Plaintiff asserted that his record book was personally identifiable information within his personal zone of privacy and that the improper

and unauthorized intrusion caused mental anguish.

Count IV, directed against the Law School, alleged negligent control of information within the Federal Educational Records and Privacy Act (20 U.S.C.A. §1232g (1986)). Count V alleged that the Law School committed wilful and wanton misconduct because despite being on notice of Padden's previous misconduct, it retained him in his position as a professor. Count VI alleged intentional infliction of emotional distress. Count VII alleged that Padden interfered with business expectancies of plaintiff in regards to his employment with another professor with the intent of causing emotional distress. Count VIII sought permanent injunctive relief to protect plaintiff's transcripts and alumni privileges in the Law School's future dealings with plaintiff.

The Law School filed both a motion for judgment on the pleadings and a motion for summary judgment. It asked for sanctions for pleadings not founded in fact or warranted by law under section 2—611 of the Code of Civil Procedure in both motions. (Ill. Rev. Stat. 1987, ch. 110, par. 2—611.) On March 23, 1987, the trial court granted judgment on the pleadings in favor of defendants and dismissed the case. At the time of the ruling, counsel for the Law School stated that it was also seeking sanctions. The trial court requested that defendants present a motion for sanctions, set a briefing schedule, and schedule a hearing.

On April 22, 1987, the Law School presented a motion for sanctions. Plaintiff filed a response and on May 19, 1987, the trial court entered a sanction judgment against plaintiff, ordering him to pay $12,637.75 in fees and costs.

Prior to reaching the merits of plaintiff's appeal, we must address the Law School's contention that this appeal must be dismissed because plaintiff's appeal from the dismissal of his complaint is not timely. Judgment on the pleadings was entered in favor of defendants on March 23, 1987. On the thirtieth day following that judgment, the Law School filed a motion for imposition of sanctions against plaintiff. That motion was granted on May 19, 1987, and plaintiff filed a motion for reconsideration limited to the judgment for sanctions. The trial court denied the motion for reconsideration on September 9, 1987, and on October 1, 1987, plaintiff filed a notice of appeal of both the dismissal of the complaint and the sanctions order. The Law School has filed a cross-appeal of the trial court's denial of its plea for additional sanctions.

The Law School contends that plaintiff was required to appeal the dismissal within 30 days of the dismissal order because it was a final

appealable order pursuant to Rule 301 when entered. (107 Ill. 2d R. 301.) Plaintiff urges that the Law School's plea for sanctions constituted a separate claim in the case and, thus, without a Rule 304(a) finding (107 Ill. 2d R. 304(a)) that there was no reason to delay enforcement or appeal of the March 23 dismissal order, that order was not final and appealable. Thus, plaintiff asserts that appeal of the dismissal of the complaint, within 30 days after his motion for reconsideration of the sanctions order was denied, was timely.

In *Hise v. Hull* (1983), 116 Ill. App. 3d 681, 452 N.E.2d 372, the trial court dismissed the plaintiff's complaint for failure to state a cause of action, but reserved for future hearing the defendant's motion for section 2—611 attorney fees. This court dismissed the appeal finding that the demand for section 2—611 attorney fees is a "claim" as that term is used in Rule 304(a) and, therefore, without a Rule 304(a) finding that there is no just reason for delaying enforcement or appeal, a judgment which does not dispose of all the claims in an action is not appealable.

■ In the present case, the Law School made a request for sanctions in its motion for judgment on the pleadings and for summary judgment. Therefore, sanctions became part of the same action. Under the reasoning of *Hise*, because the trial court did not enter a Rule 304(a) finding with the order of dismissal, that portion of the case was not appealable until judgment on the issue of sanctions was entered. We find that plaintiff's appeal within 30 days of the denial of his motion for reconsideration is timely.

In turning to the merits of the case, both parties agree that the present case is governed by *Connelly v. University of Vermont* (D. Vt. 1965), 244 F. Supp. 156, which states the general rule regarding judicial review of academic decisions. This Federal standard has been used by Illinois courts. (*Tanner v. Board of Trustees of the University of Illinois* (1977), 48 Ill. App. 3d 680, 363 N.E.2d 208; *DeMarco v. University of Health Sciences/The Chicago Medical School* (1976), 40 Ill. App. 3d 474, 352 N.E.2d 356.) In *Connelly*, the court held that a plaintiff who was victimized by an arbitrary grading process can obtain judicial relief. *Connelly* involved a medical student dismissed from school for academic reasons.

Plaintiff stresses that he has not asked for reconsideration of the grade received. Rather, through his complaint alleging breach of contract and commission of several intentional torts, plaintiff claims the Law School acted in bad faith and in an arbitrary and capricious manner. We note at the outset, keeping in mind plaintiff's claim for monetary damages, the anticipated difficulty of assessing damages where

plaintiff claims the injury sustained consists of having received a "D" in a course and the resulting reduction in class rank. We find no validity in plaintiff's claim that awards of damages against educational institutions in favor of mistreated students have long been the rule. Plaintiff has not cited a case where damages were assessed against a school for student mistreatment. Most cases are in the nature of *mandamus* seeking reinstatement in a program of academic studies or compelling the school to confer a degree. (See *Connelly*, 244 F. Supp. 156; *DeMarco v. University of Health Sciences/The Chicago Medical School* (1976), 40 Ill. App. 3d 474, 352 N.E.2d 356; *Paulsen v. Golden Gate University* (1979), 93 Cal. App. 3d 825, 156 Cal. Rptr. 190.) In every case in which damages were sought for breach of contract or tort, the issue was remanded and the cases cite no disposition of the issue. See *Tanner v. Board of Trustees of the University of Illinois* (1977), 48 Ill. App. 3d 680, 363 N.E.2d 208; *Litka v. University of Detroit Dental School* (E.D. Mich. 1985), 610 F. Supp. 80.

■ Count I of plaintiff's complaint alleges a breach of contract based upon an implied term. Plaintiff alleges that Padden threatened the students with retaliation if the student teacher evaluations were not to his favor and that Padden improperly maintained the evaluations at the end of the last class. Plaintiff alleges that the law affords a legal protection of confidentiality to the student evaluating a teacher under these circumstances and that Padden breached this confidentiality, causing damages.

Plaintiff relies on *Equal Employment Opportunity Comm'n v. University of Notre Dame Du Lac* (7th Cir. 1983), 715 F.2d 331, where the court used Federal Rule of Evidence 501 (Fed. R. Evid. 501) to create a qualified academic-freedom privilege protecting academic institutions against the disclosure of the names and identities of persons participating in the peer review process in the context of university tenure decisions. Plaintiff cites no judicial authority for the type of privilege urged here. We note, however, that the Law School values the confidentiality of the student teacher evaluations and thus provides for anonymous evaluations and procedures to ensure that such evaluations remain anonymous. Nonetheless, without alleging some protection due under the law, plaintiff has failed to state a cause of action for breach of an implied term which is deserving of judicial recognition.

Count II of plaintiff's complaint relies on the same facts pled in count I and alleges a breach of confidence, a judicially recognized intentional tort. Plaintiff relies both on Illinois common law and statutory law to urge that the facts of this case constitute a breach of con-

fidence. We find that neither branch of law allows a cause of action for breach of confidence under the facts of this case.

Plaintiff cites *Carlson v. New York Insurance Co.* (1966), 76 Ill. App. 2d 187, 222 N.E.2d 363, as a case describing the tort of breach of confidence and its evolvement from principles of contract law. In reality, the *Carlson* case is neither a cause of action for breach of confidence nor does it mention the existence of such a tort. There, an insured sought to recover benefits under an accident policy issued by the defendant and the major issue was coverage and the presence of a preexisting condition. In a supplemental opinion, the court addressed the claim of the defendant that the court had applied a tort concept to contract law. In justifying its action, the court noted the repeated recognition of the right of an insurer to plead and assert a defense sounding in tort to a suit in contract based on the applicable insurance policy. With this background, the court stated that it was not reticent to apply the tort principle of proximate cause in construing the meaning of the insurance policy before it. We fail to see how plaintiff can maintain that *Carlson* describes the tort of breach of confidence and its evolvement from principles of contract law.

■ All other cases cited by plaintiff to urge a common law tort of breach of confidence arise in the context of trade secrets and violation of a confidential relationship in a business context. In *Goldberg v. Medtronic, Inc.* (7th Cir. 1982), 686 F.2d 1219, the court described the instant tort under Minnesota law, stating that the result would probably be the same under Illinois law. The court found that the plaintiff had disclosed certain medical concepts to defendant under circumstances creating an obligation of confidence and that defendant misappropriated this confidential information and used it to design a medical product, thus breaching the obligation of confidence. We refuse to extend the tort of breach of confidence to the present circumstances.

We further reject plaintiff's attempt to create a breach-of-confidence liability under Illinois statutory law. All cases relied upon by plaintiff are easily distinguishable in that they impose a duty of confidence based on a privilege which statutorily protects certain information obtained by a medical doctor or psychiatrist in a professional relationship with a patient. No such statutory privilege exists in the present case.

■ Count III of plaintiff's complaint is for invasion of privacy, labeled "intrusion into the seclusion" in his brief on appeal. Plaintiff alleges he suffered severe emotional distress because Padden intentionally and maliciously intruded into plaintiff's seclusion by wrongfully .

accessing plaintiff's student file at the Law School. The elements of the tort which plaintiff alleges in the present case were set forth in *Melvin v. Burling* (1986), 141 Ill. App. 3d 786, 789, 490 N.E.2d 1011:

"In order to state such a cause of action, the facts which must be alleged are (1) an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion must be offensive or objectionable to a reasonable man; (3) the matter upon which the intrusion occurs must be private; and (4) the intrusion causes anguish and suffering."

■ We focus on the word "unauthorized" in the first element above. We do not agree with plaintiff's allegation that Padden was not acting in the capacity of plaintiff's teacher, supervisor or within some other proper capacity with respect to plaintiff when he viewed plaintiff's file. Plaintiff has not shown a right to privacy of his student file in regards to a school professor or that any investigation into his school file by Padden was unauthorized.

Count IV of the complaint alleges that the Law School breached its duty under the Federal Educational Records and Privacy Act (FERPA) to control and manage student records, files and documents. (20 U.S.C.A. §1232g (1986).) At the outset, we agree with defendant that this statute does not confer a private cause of action. Enforcement is solely in the hands of the Secretary of Health, Education and Welfare under subsection (f). See *Girardier v. Webster College* (8th Cir. 1977), 563 F.2d 1267; *Fay v. South Colonie Central School District* (2d Cir. 1986), 802 F.2d 21.

■ Plaintiff argues however, that his count was based on common law negligence and the FERPA regulations constitute the standard of care in a negligence action. Plaintiff bases this claim on *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 356 N.E.2d 93, and cases following that decision holding that a violation of statute or ordinance designed for protection of human life or property is *prima facie* evidence of negligence. We reject plaintiff's contention and distinguish all cases cited by plaintiff on the basis that they actually involved statutes designed for protection of human life or property.

■ Count V is for wilful and wanton conduct and seeks treble punitive damages. The trial court dismissed this claim, stating that there is no separate tort of wilful and wanton misconduct based upon an application of *Morrow v. L.A. Goldschmidt Associates, Inc.* (1986), 112 Ill. 2d 87, 492 N.E.2d 181. In *Morrow*, the court explained that the exception to the general rule that punitive damages are not recoverable for breach of contract is when the breach amounts to an independent tort and there are proper allegations of malice, wantonness or

oppression. (112 Ill. 2d at 95, citing *Bank of Lincolnwood v. Comdisco, Inc.* (1982), 111 Ill. App. 3d 822, 829, 444 N.E.2d 657.) The *Morrow* court analyzed the plaintiffs' claim that certain construction defects constituted wilful and wanton conduct. The court rejected this claim, stating that simply characterizing a breach of contract as wilful and wanton does not transform the breach into a tort. Thus, the court refused to acknowledge an independent tort of wilful and wanton conduct, and on this basis, the trial court properly dismissed Count V.

■ Count VI expresses a claim for intentional infliction of emotional distress. The conduct giving rise to a claim for intentional infliction of emotional distress must be extreme and outrageous. (*Public Finance Corp. v. Davis* (1977), 66 Ill. 2d 85, 360 N.E.2d 765.) Furthermore, infliction of emotional distress alone is not sufficient to give rise to a cause of action. The emotional distress must be *severe.* "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Public Finance*, 66 Ill. 2d at 90, quoting Restatement (Second) of Torts §46, comment *j* (1965).

■ As the result of defendants' actions already set forth along with improper communications by Padden to Professor Johnston, another professor at the Law School, plaintiff claims he suffered severe emotional distress manifested by anxieties, depression, and other physical manifestations such as the loss of time, loss of ability to concentrate, and interference with peace of mind. Plaintiff asserts that the issue of whether the conduct in the present case was grievous enough to sustain his cause of action should be submitted to a jury. We believe, however, that as a matter of law, the conduct alleged is not of such an extreme and outrageous nature as to constitute a basis for recovery for intentional infliction of emotional distress. Nor does the distress alleged measure up to allow recovery under this theory. This claim was also properly dismissed by the trial court.

■ Count VII alleges interference with business expectancies. Plaintiff alleges that he and Professor Johnston entered into several gentlemen's agreements to produce scholarly writings pertaining to law and business policy and that such writings never reached fruition due to Padden's intrusive behavior. In order to state a cause of action for the tort of interference, a plaintiff must allege the existence of a valid business relationship or expectancy; knowledge of the relationship or expectancy on the part of the defendant; an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to plaintiff. *Launius v. Najman* (1984), 129 Ill. App. 3d 498, 472 N.E.2d 170.

■■ While virtually any type of contract is sufficient as the foundation of an action for procuring its breach, a contract must be in force and effect. (*Millsaps v. Bankers Life Co.* (1976), 35 Ill. App. 3d 735, 342 N.E.2d 329.) An affidavit of Johnston states that the only express agreement he had with plaintiff was to publish a paper on the law of qualified privilege and that the sole reason the paper has not been published was due to Johnston's other professional commitments. Plaintiff acknowledges that his business expectancies were dependent upon a good relationship with Professor Johnston. We do not believe that the allegations of several gentlemen's agreements are sufficient to state a cause of action for interference. Furthermore, plaintiff has failed to sufficiently allege a knowledge on the part of Padden of these gentleman's agreements and plaintiff's expectancies of publication. The trial court properly dismissed this count.

■■ ■ Plaintiff's final count seeks equitable relief, namely a permanent injunction enjoining the Law School or any of its agents from refusing to deal in good faith with plaintiff in the future in regards to his alumni privileges and tendering of transcripts or other information. Plaintiff claims a property interest in his permanent transcripts and alumni privileges which require protection. A complainant's right to injunctive relief rests on actual or presently threatened interference with another's rights, and such relief will not be granted on mere suspicion of an intended wrong. To obtain equitable relief, one must show an actual substantial injury which is not speculative or contingent upon uncertainties. (*Kaplan v. Kaplan* (1981), 98 Ill. App. 3d 136, 423 N.E.2d 1253.) We believe plaintiff's claim for injunctive relief is without legal basis. We have not found any injury to plaintiff in the previous counts of his complaint. Without a clear showing of a violation of rights and proof of a specific injury as a result of the violation, injunctive relief is not warranted. (*Plasti-Drum Corp. v. Ferrell* (1979), 70 Ill. App. 3d 441, 388 N.E.2d 438.) Nor has plaintiff shown an inadequate remedy at law or that he will suffer irreparable harm. (See *Distaola v. Department of Registration & Education* (1979), 72 Ill. App. 3d 977, 391 N.E.2d 489.) We find that the trial court properly dismissed plaintiff's complaint.

■■ Plaintiff also challenges the trial court's award of sanctions under section 2—611. (Ill. Rev. Stat. 1987, ch. 110, par. 2—611 (eff. November 25, 1986).) Few cases have required a court of review to apply the amended section 2—611. (See *In re Mitan* (1987), 119 Ill. 2d 229, 518 N.E.2d 1000; *Ignarski v. Heublein* (1988), 171 Ill. App. 3d 830, 525 N.E.2d 995; *Frisch Contracting Service Co. v. Personnel Protection, Inc.* (1987), 158 Ill. App. 3d 218, 511 N.E.2d 831.) As we

held in *Ignarski v. Heublein,* however, the 1986 amendments render the section's scope much broader than the former version (see *In re Mitan* (1987), 119 Ill. 2d 229, 518 N.E.2d 1000), and it is more than a mere change in an existing procedure or remedy (*Ignarski v. Heublein* (1988), 171 Ill. App. 3d 830, 525 N.E.2d 995). Thus, we find that the trial court erred in finding section 2—611 to be retroactive. We hold that the amendments in the current version of section 2—611 will not be applied retroactively in this case.

In regard to the application of the previous section 2—611 to the facts presented here, we note that, generally, due to its penal nature, section 2—611 will only be invoked where the allegations fall strictly within the terms of the provision. (*Williams v. City of Chicago* (1977), 54 Ill. App. 3d 974, 370 N.E.2d 119.) The statute must be strictly construed according to its terms. *In re Application of Cook County Collector* (1986), 144 Ill. App. 3d 604, 494 N.E.2d 536.

The sanctions here were for outrageous comments made by plaintiff in a letter or in open court, and not for allegations made in a pleading, as required by the previous section 2—611. (See *Navarro v. Edgar* (1986), 145 Ill. App. 3d 413, 495 N.E.2d 1085.) For these reasons, we must set aside the trial court's award of sanctions.

In view of our holding, we do not reach the Law School's contention in its cross-appeal that the trial court erred in not awarding it additional sanctions.

Accordingly, the judgment of the circuit court of Cook County dismissing plaintiff's complaint is affirmed. The sanction judgment of $12,637.75 against plaintiff is reversed.

Judgment affirmed in part; reversed in part.

WHITE, P.J., and FREEMAN, J., concur.