HAZEL CREST FEDERATION OF TEACHERS, LOCAL 2077, IFT, AFT, AFL-CIO, *et al.*, Plaintiffs-Appellants, v. BOARD OF EDUCATION OF SCHOOL DISTRICT 152½, Cook County, Defendant-Appellee.

First District (4th Division)   No. 1—89—1331

Opinion filed November 15, 1990.

Gilbert Feldman, of Cornfield & Feldman, of Chicago, for appellants.

Walter D. Cummings, of Walter D. Cummings, Ltd., of Homewood, for appellee.

PRESIDING JUSTICE McMORROW delivered the opinion of the court:

This is an appeal from an order awarding attorney fees and costs pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611). The sole issue presented is the propriety of that order.

On November 12, 1986, the Hazel Crest Federation of Teachers, Local 2077 (Union), and four individual members of the Union, Eudell Black, Jacqueline Davis, Ceopal Porter and Velma Webb (plaintiffs) filed a two-count complaint against the Board of Education of School District 152½ (the Board), alleging breach of the collective bargaining agreement in effect in May 1985. The facts giving rise to this action were presented through testimony at the arbitration hearing[1] as related in the arbitrator's decision and through testimony given at trial.

---

[1]The record does not contain a transcript of the arbitration hearing, but the parties do not dispute the arbitrator's summary of the testimony and evidence presented at the hearing.

In 1985, the individual plaintiffs were all employed as teachers in the school district. Porter and Webb were assigned exclusively to the Warren Palm (Palm) elementary school, while Black and Davis were specialty teachers (physical education and special education, respectively) who taught at different schools in the district on different days of the week.

Sometime in spring 1985, a representative of Great America Amusement Park contacted the principal of Palm, Predonna Roberts, regarding a school trip to the park on Friday, May 24, 1985. Roberts contacted the PTA, which agreed to sponsor the trip by paying for the buses. On April 23, Roberts held a meeting with the teachers to discuss the proposed outing and learn their feelings about it before making a commitment to Great America. She explained that unlike prior trips involving only the eighth-graders, this outing would involve the entire student body of almost 200 children and that, therefore, the cooperation of the teachers was necessary. It is undisputed that the overall response of the teachers in attendance that day was favorable. On April 24, flyers were distributed to the children stating that the buses would depart at 8:15 a.m. and return at approximately 6 p.m., 3½ hours beyond the normal school day.

Porter testified that the teachers met a few days later to discuss the trip among themselves. She and several others had not initially realized that May 24 was the Friday before the Memorial Day weekend, and that they had previously made plans for that Friday evening. On April 26, two teachers wrote a note to Roberts requesting a meeting with her regarding numerous questions they had about the trip, one of which was whether all teachers would be required to attend. On April 30, another faculty meeting was held at which all the teachers, except the specialty teachers, were present. According to Roberts, she advised them that their attendance on the trip was required. Porter and Webb testified that Roberts did not say that attendance was mandatory. Porter testified that she told Roberts at that meeting that she could not go because she had committed herself to picking up relatives at O'Hare airport after regular school hours that day, but Roberts said she was not interested in her reasons for not going. Roberts denied that Porter told her then or at any time prior to the day of the trip that she could not attend.

On May 1, a questionnaire prepared by the PTA was distributed to all the teachers. It read:

"In order to know definitely that the staff will attend the Great America trip planned for May 24, 1985, we ask that each teacher sign his or her name and indicate a yes or no answer

by Thursday, May 2. The trip will be cancelled if we do not have adequate staff participation. Parents will be notified of the decision no later than May 3, 1985."

Of the 16 teachers, eight responded to the questionnaire, five saying that they would attend and three saying they would not. One of those answering "no" was Davis, who wrote that she would be at another school on that day. The PTA then distributed another flyer to the children requesting parent-chaperones. It was the plaintiffs' position that the phrasing of the poll and flyer implied that attendance was optional.

A regular faculty meeting was held on May 14. Porter testified that prior to the meeting she approached Roberts to repeat that she was unable to go on the trip. Roberts responded that she did not wish to hear Porter's explanation because the meeting was not held to discuss the trip. It appears that the only issue raised concerning the field trip was who would pay for the teachers' admission to the park. Nothing was said at the meeting about mandatory attendance.

At a Board meeting on May 20, the PTA president advised the Board that several of the teachers indicated they would not be attending. Superintendent Dorothy Boyd, as well as Roberts, testified that Boyd directed Roberts to make it clear that all teachers were expected to attend the outing.

Three days later, May 23, Roberts held another meeting at which she read the following prepared statement,

"In a discussion at Monday Night's School Board Meeting relative to the question if all teachers are required to go on the school field trip sponsored by the PTA to Great America on Friday, May 24th, since this is a school-wide function, all teachers who normally teach at Warren Palm on that day are required to attend and supervise on Friday, May 24th."

Roberts testified that someone asked if all teachers had to attend the outing whereupon she reread the above statement. Porter testified that she did not fully understand the statement and asked Roberts to give her a copy, but Roberts refused.

On the morning of May 24, approximately 160 students from the school boarded buses for the field trip. One teacher who had been excused from the trip was assigned to remain at the school to supervise the children who did not go. Two other specialty teachers assigned to Palm on Friday afternoons were also excused and assigned tasks at the school. Another teacher called in sick and subsequently produced a medical statement confirming her illness. Altogether, six teachers attended the outing.

Porter testified that she was summoned to Roberts' office at about 8 a.m. Roberts asked her if she was refusing to go on the field trip. Porter stated that she had explained some time ago her reasons for not being able to go. Roberts asked whether Porter was refusing an assigned task, to which Porter responded that her understanding was that her task was to be at school supervising those of her students not attending the trip. Porter remained at school for the day, grading papers. Porter stated that she had personally planned and taken her own students on two prior trips to Great America and repeated that her only reason for not going was because the trip extended into the evening for which she had prior commitments. She also maintained that she had not been directly told that she was obligated to go on the trip until her conversation with Roberts that morning.

According to the arbitrator's decision, Davis, one of the specialty teachers, testified at the arbitration hearing[2] that she was assigned to Palm only on Friday mornings and that she had assignments at other schools on Friday afternoons. She also testified that she did not attend any of the faculty meetings prior to the one held on May 23. She was, however, aware of the trip, but was one of the teachers who responded on the PTA questionnaire that she would not be attending the outing. On May 21, when Roberts asked Davis if she was going to Great America, Davis advised Roberts that she had scheduled meetings and therefore would not be available. On May 22, Roberts met with Davis and the principal of the other school and advised the principal that Davis did not have her permission to be away from Palm that day. Davis stated that she had not needed permission to schedule meetings at other schools in the past, that she had never been required to attend an outing with the students in the 13 years of her employment in the district, and that she had advised Roberts at the meeting that she was not going on the trip. Davis further testified that prior to May 22, she was never told that her attendance was mandatory and that she was unable to attend because she had to pick up her child from her babysitter immediately after regular school hours. Roberts testified that when she asked Davis if she was refusing to go on the trip, Davis responded affirmatively.

Black, the other specialty teacher, testified at the arbitration hear-

---

[2]Davis was subsequently promoted to principal of another school. As such she was no longer a member of the bargaining unit and did not pursue her claim. The Board moved for her dismissal, and by agreed order, she was dismissed as a plaintiff.

ing[3] that he was never informed that attendance was mandatory until the meeting of May 23 and that even then he was not sure he was required to go because he had never before attended a field trip with the students. Roberts testified that when she asked him if he was refusing to go, Black stated, "I guess so."

Webb likewise testified at the hearing[4] that she did not realize that attendance was mandatory and that she had stated at two prior faculty meetings that she could not go and that she also indicated on the PTA questionnaire that she would not be able to attend.

Roberts telephoned Superintendent Boyd to inform her of the plaintiffs' refusals to go on the field trip. Boyd questioned each one and asked if he/she realized that their pay would be docked and each responded that he/she understood. Boyd testified that she neither requested nor received any explanations from any of the plaintiffs regarding their reasons for not attending.

On May 28, Boyd instructed the district's payroll clerk to deduct one day's pay from each of the plaintiffs' salaries for their unexcused absence from their duties on May 24. On June 7, plaintiffs Black, Davis and Porter filed grievances on forms supplied by the Union, of which Porter was president. They alleged a violation of the labor agreement by Roberts and sought both back pay for May 24 and a clarification of the policy which authorized their being required to perform extra-duty assignments such as the Great America trip. On June 12, Webb sent a letter to the superintendent grieving the docking of her pay. On June 20, she submitted a second grievance and requested that it be placed on the agenda of the Board's regular monthly meeting.

On June 17, the Board approved Boyd's decision to dock plaintiffs' pay, and on June 24 the Board also voted to issue formal notices of remediation to plaintiffs for improper conduct in refusing to attend the outing. The Board advised them that it considered their conduct insubordination and that a failure to remedy could result in dismissal. On June 25, Boyd responded to the grievances of Davis, Black and Porter stating that the agreement provision which they claimed had been violated merely provided for extra compensation for special assignments, and that since none of them had attended the trip, it was inapplicable. On July 1, Boyd sent Webb a similar memo regarding her grievance.

---

[3]Black did not appear at trial. No reason was given for his failure to attend and testify.

[4]Counsel for plaintiffs presented an affidavit from Webb requesting postponement of trial because Webb and her family had previously scheduled a vacation for the week of trial. The trial court denied the motion. Webb did not appear at trial.

On July 9, plaintiffs and the Union agent met with the Board, and on August 19 the Board voted to deny the grievances. The grievances were then appealed to advisory arbitration.

In a lengthy written decision, the arbitrator agreed with the Board that a teacher does not have the right to refuse to follow a directive of a supervisor. However, he disagreed with the Board's argument that this matter was a simple case of insubordination. After reviewing all the testimony and evidence presented at the arbitration hearing, he concluded that the teachers were not given clear instructions that their attendance was mandatory until the day before the outing. He stated that a clear written direction should have been given because there had never before been a school-wide trip like this and that an event involving almost 200 children required careful planning and teamwork. He also stated that because the event was scheduled for the day before a holiday weekend, the Board should have expected that some teachers would make plans on the assumption that the school day would end at its normal time and, therefore, the Board should have made it clear well in advance that they would be required to participate in an event that went beyond the normal school day. He found that written instructions were particularly important in the cases of Davis and Black, the two specialty teachers, who were not permanently assigned to the school, who had not attended any faculty meetings prior to May 23, and who had never previously been required to attend a school field trip.

The arbitrator noted the testimonial contradictions on whether the teachers had been advised they were required to attend the event. He found that despite being aware several weeks before the trip that many of the teachers did not want to go, Roberts nevertheless did not make it clear that they were required to attend, and that she further waited three days after being directed by the Board to do so to convene the meeting at which she read the prepared statement. He further found that it was reasonable for plaintiffs to infer, from the questionnaire distributed to the teachers by the PTA and the flyers sent home with the children requesting parents to volunteer to be chaperones, that attendance was optional.

The arbitrator did not, however, agree with the teachers' position that their actions were justified. He found that had adequate notice been given, none of the four had a reason sufficient to justify his or her not going. He stated that even though they were not given reasonable notice, they were aware of the trip and knew that teachers were wanted to accompany their students, yet they made

no effort to seek clarification of whether attendance was mandatory or optional. He further found that once it was made clear that they were required to attend, they did not, as they should have, performed the assignment given to them and filed a grievance afterward; rather, they resorted to self-help and simply refused to obey the directive.

The arbitrator concluded that under all the circumstances, the Board violated the labor agreement by failing to give adequate notice to the teachers, but that the plaintiffs wrongfully defied authority. Based on these findings, he concluded that some discipline of the plaintiffs was appropriate, but that it should not extend to the loss of a day's pay. Instead, he determined that sanction be limited to a formal letter of warning, which had already been sent to them and placed in their personnel files.

On April 26, 1986, the Board adopted a resolution accepting that portion of the award finding that discipline of the plaintiffs was appropriate, but rejected those portions that found the Board to have violated the labor agreement and the recommendation that the discipline be limited to the letter of warning previously received by them.

Plaintiffs filed their two-count complaint on November 12, 1986. Count I alleged that although the labor agreement then in effect provided that arbitration was advisory rather than binding, the Board had failed to comply with the contractual requirement that "[t]he parties agree to give good faith consideration to the decision of the arbitrator." Count II sought reversal of the Board's rejection of the arbitrator's decision and enforcement of his award on the ground that his findings and interpretation of the agreement were correct.

The Board moved to strike and dismiss both counts of the complaint, arguing that count I was wholly conclusionary and that because the arbitration was advisory only, the court did not have jurisdiction to reverse the Board's resolution rejecting it.

The trial court denied the motion to dismiss count I but dismissed count II with leave to amend. Plaintiffs filed an amended complaint expanding on the arguments raised in opposition to the Board's motion to dismiss. The Board filed its answer and affirmative defenses.

Plaintiffs then filed a motion for summary judgment on count I. The Board filed a memorandum in opposition and affidavits from the members of the Board stating that he or she had given good-faith consideration to the arbitrator's decision. Plaintiffs' motion for

summary judgment was denied.

At the close of plaintiffs' case, the trial court granted the Board's motion for a directed verdict against Porter on count I for failing to present any evidence in support of the claim of a lack of good-faith consideration by the Board. Judgment was also entered against plaintiffs Webb and Black on both counts for failing, by their absence from trial, to present any evidence in support of either count. Following the defense case, the court granted the Board's motion to dismiss count II, finding that Porter improperly refused to perform an assigned function on a regular school day with no· prior notice to the school that she would not attend the outing.

Following trial, the court granted the Board leave to file a petition for fees and costs. In that petition, filed August 18, 1988, the Board alleged that, without reasonable cause, plaintiffs had pleaded allegations which were found to be untrue by the court. Specifically, the Board first asserted that plaintiffs untruthfully alleged in their amended complaint that the Board stated in its resolution that it had no obligation to provide reasonable notice and that the Board was guilty of failing to give good-faith consideration to the arbitrator's decision merely by adopting its resolution. The Board also asserted that plaintiffs' allegation that the teachers had not been told prior to the day before the outing that their attendance was mandatory was proved to be untrue by the testimony of the principal and the PTA president, who both testified that the teachers were so informed at faculty meetings held several weeks before the trip. Attached to the motion was a five-page exhibit setting out the legal services performed and costs expended in defending this litigation which totalled $10,000, plus $999.00 in costs..

On May 1, 1989, the court granted the Board's petition and ordered that. plaintiffs were jointly and severally liable to pay the amounts requested by the Board for fees and costs. This· appeal followed.

OPINION·

Because this appeal does not challenge the judgment .in the underlying action, our review does not reach the correctness of the arbitrator's decision or of the trial court's rulings on the merits. Rather, it is limited to the propriety of the order imposing sanctions.

■ Prior to its amendment, section 2–611 provided:

"Allegations and denials, made without reasonable cause

and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court upon motion made within 30 days of the judgment or dismissal." Ill. Rev. Stat. 1985, ch. 110, par. 2—611.

Effective November 25, 1986, section 2—611 was amended to be more extensive in scope than the former version. It requires that every pleading, motion or other paper filed with the court be signed by the party's attorney or, if not represented by counsel, by the party himself. As amended, section 2—611 further provides in relevant part:

"The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Ill. Rev. Stat. 1987, ch. 110, par. 2—611.

The purpose of both versions of section 2—611 is to penalize litigants and, now, their attorneys, who plead false or frivolous matters or bring suit lacking factual or legal foundation. *In re Estate of Wernick* (1989), 127 Ill. 2d 61; *Acerra v. Gershinzon* (1990), 200 Ill. App. 3d 327; *Chicago Title & Trust Co. v. Anderson* (1988), 177 Ill. App. 3d 615, 532 N.E.2d 595.

In this appeal, the Board has abandoned, or at least significantly altered, the argument made in its petition which was based on the former version of section 2—611, that plaintiffs pleaded untrue allegations without reasonable cause. The Board now argues that sanctions were appropriate because plaintiffs' pleadings were not well grounded in fact or warranted by existing law and were interposed for improper purposes, as must be shown under amended section 2—611. Notwithstanding its reliance on the prior version of the statute in the trial court, the Board, quoting language in the historical and practice notes to amended section 2—611 argues that the amended statute departs so substantially from its predecessor that the preamendment cases cited by plaintiffs in that portion of their brief regarding the standard of review "now have only a general continuing relevance." The Board asserts that under amended

section 2—611 the standard of review is simply whether the trial court abused its discretion.

■■ Initially, we note that the comment in the historical and practice notes quoted by the Board relates to the substantive changes in amended section 2—611, not to the standard of review. The commentators remarked that because the first paragraph was completely rewritten and greatly expanded, "cases interpreting the first paragraph of the [former version] now have only a general continuing relevance." (Ill. Ann. Stat., ch. 110, par. 2—611, Historical and Practice Notes, at 23 (Smith-Hurd Supp. 1990).) Further, the Board is correct, insofar as it states that the standard of review of a decision to grant or deny fees is whether the decision constituted an abuse of discretion. However, to the extent that the Board suggests that this is a different standard than that which was applied in cases under former section 2—611, it is incorrect.

■■ This court has had several occasions to review orders granting or denying sanctions entered under amended section 2—611. In determining whether there was an abuse of discretion, the courts have consistently held, as they did under the former version, that because the statute is penal in nature, it must be strictly construed and may be applied only when the party seeking the sanctions has sustained his burden of proving that each of its requirements has been met. If the party petitioning for sanctions fails to meet its burden, the imposition of such sanctions constitutes an abuse of discretion. *Acerra v. Gershinzon* (1990), 200 Ill. App. 3d 327; *Harris v. Harris* (1990), 196 Ill. App. 3d 815; *Chabraja v. Avis Rent A Car System, Inc.* (1989), 192 Ill. App. 3d 1074, 549 N.E.2d 872; *Dunaway v. Ashland Oil, Inc.* (1989), 189 Ill. App. 3d 106, 544 N.E.2d 1322; *People ex rel. West v. Herrendorf* (1989), 187 Ill. App. 3d 777, 543 N.E.2d 824; *Chicago Title & Trust Co. v. Anderson* (1988), 177 Ill. App. 3d 615, 532 N.E.2d 595; *Mucklow v. John Marshall Law School* (1988), 176 Ill. App. 3d 886, 531 N.E.2d 941; *Ignarski v. Heublein* (1988), 171 Ill. App. 3d 830, 525 N.E.2d 995.

The Board contends that count I, which alleged that the Board failed to give good-faith consideration to the arbitrator's decision, was well-grounded in neither fact nor law. The Board first argues that plaintiffs' complaint misrepresents its position by incorrectly paraphrasing the language in the resolution concerning the obligation to give reasonable notice of a change of assignment.

■■ Initially, we note that the resolution was attached to the complaint as an exhibit. Facts in an exhibit attached to a complaint are considered the same as having been alleged in the complaint;

and where there is a conflict between the exhibit and the pleading, the exhibit controls over the pleading. (*Ford v. University of Illinois Board of Trustees* (1977), 55 Ill. App. 3d 744, 371 N.E.2d 173.) Here, the resolution was attached to and thereby made part of plaintiffs' complaint. Thus any misstatements in the complaint were negated by the resolution itself.

■ We do not see a material misrepresentation of the resolution in the complaint. The arbitrator found from the evidence presented at the hearing that it had not been made clear to plaintiffs that their attendance was mandatory until the day before the trip. The arbitrator found that one day's notice did not constitute adequate notice. In light of the Board's statements in its resolution that it was not obligated to give even the one day's notice, we do not view plaintiffs' allegation that the Board found it had no obligation to provide reasonable notice to constitute a "false" allegation as the Board asserted in its petition for sanctions.

The Board also argued in its petition that sanctions were appropriate because plaintiffs presented nothing to support their claim that the Board failed to give good-faith consideration to the arbitrator's decision. A review of the record reveals that plaintiffs argued in opposition to the Board's motion to dismiss and, later, in support of their motion for summary judgment and at the close of plaintiffs' case that the Board's authority to reject the arbitrator's decision was limited by the contractual precondition of good-faith consideration. Citing several cases dealing with contract law, plaintiffs argued, *inter alia,* that where there is a covenant of good faith, the burden is on the party claiming it acted in good faith to substantiate that claim. Plaintiffs asserted that a public body speaks only through its documents and noted that the resolution merely recited that it had given the arbitrator's decision good-faith consideration but did not specify any reasons for rejecting the award except that it strongly disagreed with those portions finding misconduct by the Board. It was plaintiffs' position that the resolution itself, by its summary rejection of the arbitrator's decision without explanation therefor, established, as a matter of law, that the Board did not give good-faith consideration to the arbitrator's decision. Plaintiffs also maintained that the factual allegations in count I were admitted by virtue of the Board's motion to dismiss and noted that the motion had been denied.

The trial court rejected plaintiffs' arguments and held that whether the Board acted in good faith in rejecting the arbitrator's decision was, as indicated by the court's denial of plaintiffs' motion

for summary judgment, a question of fact. The court further held that because plaintiffs presented no evidence of a lack of good faith, the Board was entitled to judgment on count I. The court also specified plaintiffs' failure to present evidence in support of count I as one of the bases for the imposition of sanctions.

■■ ■ In ruling on a petition for sanctions, the operative event activating section 2—611 is the conduct giving rise to possible liability for fees and costs. (*Berkin v. Orland Park Plaza Bank* (1989), 191 Ill. App. 3d 1056, 548 N.E.2d 534.) In reviewing an award of sanctions, the mere fact that plaintiffs did not prevail is insufficient to establish that the complaint was without foundation in law. (*Chabraja v. Avis Rent A Car System, Inc.* (1989), 192 Ill. App. 3d 1074, 549 N.E.2d 872; *Chicago Title & Trust Co. v. Anderson* (1988), 177 Ill. App. 3d 615, 532 N.E.2d 595.) The question is whether the party petitioning for sanctions proved that at the time the challenged pleading was filed, it violated the requirements of amended section 2—611. (*Model Industries, Inc. v. Walsh Press & Die Co.* (1982), 111 Ill. App. 3d 572, 444 N.E.2d 639.) To sustain that burden the petitioner must show that the pleading was filed without reasonable information or belief after reasonable inquiry by the pleading party, or that it was not well grounded in fact or warranted by existing law or a good-faith argument for the modification, extension or reversal of existing law.

■ Plaintiff argued that count I and the attached resolution raised a legal question which needed to be determined as a matter of law. The trial court disagreed with plaintiffs' arguments and held that it was plaintiffs' burden to present factual evidence of bad faith by the Board. Plaintiffs argued that because the Board claimed it had acted in good faith, the burden was on the Board to produce evidence to prove that claim. To support this legal argument, plaintiffs relied upon several cases pertaining to contract law. We cannot conclude that plaintiffs' argument was wholly without support under existing law or that it was not a good-faith argument for the extension, modification or reversal of existing law as is contemplated by the provisions of amended section 2—611. See *Chabraja v. Avis Rent A Car System, Inc.* (1989), 192 Ill. App. 3d 1074, 549 N.E.2d 872.

In its brief, the Board also argued that count II contained untrue factual allegations which were made without reasonable cause. On appeal, the Board asserts that there was no factual basis for plaintiffs' allegations (1) that the first notice they received that they were required to attend the outing was the day before the

trip; and (2) that the Board violated the implied contractual condition to give reasonable notice of an assignment extending beyond normal school hours. We disagree.

In entering judgment for the Board at the conclusion of trial, the court made findings that May 24, 1985, was a regular school day, that the trip was a school-sponsored event which could not go ahead without the teachers' cooperation, and that in fact there had been a consensus among the teachers to go ahead with the trip. The court further found that Porter had given no prior notice to the school that she would not be going on the trip and simply refused on the day it took place to participate. In its order awarding sanctions, the court stated that Porter had presented no evidence that she had not been given previous notice that she was required to participate in the outing.

At the arbitration hearing, the arbitrator heard the testimony of all four plaintiffs, each of whom denied that he or she had been advised that attendance was mandatory, as well as the contradictory testimony of Roberts that she had so advised them. The arbitrator found the testimony of the plaintiff teachers to be more credible, noting that there had been no written directive that attendance was mandatory. The arbitrator also found that it was not unreasonable for the teachers to infer from the PTA questionnaire asking the teachers if they would be attending and the flyer asking for parent-chaperones that attendance was optional. The arbitrator noted that while Roberts may have intended to make it clear that all teachers were required to attend, "her efforts were insufficient," particularly in the cases of the two specialty teachers who were not present at the faculty meetings at which the trip was discussed.

■ As stated at the outset of our opinion, our holding is not to be construed as a determination on the credibility of the witnesses. Nor is our ruling to be construed as review of the credibility findings of the arbitrator and trial court. As noted, however, the issue in reviewing sanction awards under section 2—611 is not whether plaintiffs prevailed but whether the challenged pleading or paper was devoid of factual foundation at the time it was filed. (*Chabraja v. Avis Rent A Car System, Inc.* (1989), 192 Ill. App. 3d 1074, 549 N.E.2d 872; *Berkin v. Orland Park Plaza Bank* (1989), 191 Ill. App. 3d 1056, 548 N.E.2d 534.) To support its entitlement to sanctions, the Board was required to prove that the allegations in count II lacked any factual foundation and that plaintiffs knew or should have known there was no basis for them at the time they filed the complaint. At the time plaintiffs filed the complaint, they possessed,

and attached, the decision of the arbitrator finding their testimony and evidence on the issue of notice to be credible. It is our view that the Board failed to sustain its burden of proving that the allegations of count II lacked any factual foundation. Consequently, we find that the imposition of sanctions on the ground that Porter "presented no evidence to support her claims that she had not been given previous notice" that she was required to attend the outing constituted an abuse of discretion.

We do not, however, agree with plaintiffs that they are entitled to fees and costs on the ground that the Board's petition for sanctions itself violated section 2—611. Further, in light of our reversal of the order awarding the Board fees and costs incurred in defending the allegations in plaintiffs' complaint, we need not address the arguments relating to the reasonableness of the amount of that award.

For the reasons stated, the order of the trial court is reversed.

Reversed.

JOHNSON and LINN, JJ., concur.