**Robert SAMUEL and Augustine Samuel, Plaintiffs,**

**v.**

**CITY OF CHICAGO, a municipal Corporation, Michael Callahan, Bernard Kelly, Michael Mullen and John Doe, Defendants.**

No. 98 C 3377.

United States District Court, N.D. Illinois, Eastern Division.

March 9, 1999.

Mary R. Minella, John Christopher Mullen, Christopher Mullen, Mullen and Minella, Michael T. Mullen, Paul B. Episcope, Ltd., Chicago, IL, for Plaintiff.

Brian L. Crowe, Thaddeus S. Machnik, City of Chicago, Law Department Corporation Counsel, Michael W. Early, Thomas Joseph Platt, Robert W. Barber, Michael P. Sheehan, Steven M. Yarosh, Josh Michael Engquist, City of Chicago Department of Law, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

LEVIN, United States Magistrate Judge.

At issue before the court is Defendants Michael Callahan ("Callahan") and Michael Mullens' ("Mullen") Motion to Dismiss Plaintiffs' Amended Complaint as to certain claims. For the reasons stated below, Defendants Callahan and Mullens' Motion is granted in part and denied in part.

### FACTUAL BACKGROUND[1]

On or about June 7, 1997, at approximately 3:00 p.m., Plaintiff Robert Samuel was feeling ill and stopped to rest in his parked car at the Amoco gas station located at the corner of 103rd Street and Torrence Avenue in the City of Chicago. (Am.Compl.¶ 9.) Approximately one hour later, while Samuel was resting in his car, Defendants Michael Callahan and Michael Mullen, both Chicago police officers, approached and entered Plaintiff's car, allegedly kicked and punched Samuel on various parts of his body, and removed him

---

1. The court has taken these facts from the well-pleaded allegations contained in Plaintiffs' Amended Complaint which, for purposes of Defendants' Motions to Dismiss, are deemed true. See, e.g. Jones v. General Elec. Co., 87 F.3d 209, 211 (7th Cir.1996).

from his car without provocation, need or explanation. (Am.Compl.¶ 10.) Defendants Callahan and Mullen subsequently took Samuel from the gas station parking area, informed him that he was under arrest, handcuffed him, and transported him to the Fourth District Police Station. (Am.Compl.¶ 11.) Samuel was held and detained for approximately 11 hours, until approximately 3:00 a.m. on June 8, 1997. (Am.Compl.¶ 14.)

During the 11 hours that Samuel was detained, he repeatedly informed the officer on duty, Defendant John Doe, that he required insulin due to his diabetic condition. Samuel was not permitted access to insulin by the officers on duty at the Fourth District Police Station, and eventually, at 3:00 a.m. on June 8, 1997, Plaintiff was transported by the police to EHS Trinity Hospital. (Am.Compl. ¶¶ 15, 17.)

Samuel allegedly suffered an aggravation of his pre-existing heart condition and diabetic condition as a result of Defendants' actions, as well as contusions, lacerations and other injuries about his legs, abdomen, chest and head. He remained at EHS Trinity Hospital for three weeks until he was transferred to Michael Reese Hospital, where he remained for another three weeks. (Am.Compl.¶¶ 16, 17.)

## ANALYSIS

### I. MOTION TO DISMISS STANDARD

On a motion to dismiss, the court takes all of the well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff. *See, e.g., Wilczynski v. Lumbermens Mut. Cas. Co.,* 93 F.3d 397, 401 (7th Cir.1996). A complaint will not be dismissed on a motion to dismiss unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him or her to relief. *Id.* A complaint need not set forth all relevant facts or recite the law. All that is required is a short and plain statement showing that the party is entitled to relief. FED.R.CIV.P.

8(a); *Doherty v. City of Chicago,* 75 F.3d 318, 322 (7th Cir.1996). A plaintiff in a suit in federal court need not plead facts. Conclusions may be pleaded as long as the defendant has at least minimal notice of the claim. FED.R.CIV.P. 8(a)(2); *Jackson v. Marion County,* 66 F.3d 151, 153–54 (7th Cir.1995).

The Seventh Circuit has recently held:

Under the federal rule of notice pleading, " 'all the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and *the grounds upon which it rests.*' " *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote and citation omitted)) (emphasis added). For fair notice to be given, "a complaint must at least 'include the operative facts upon which a plaintiff bases his claim.' " *Lucien v. Preiner,* 967 F.2d 1166, 1168 (7th Cir.1992) (quoting *Rodgers v. Lincoln Towing Service, Inc.,* 771 F.2d 194, 198 (7th Cir.1985)). A plaintiff "need not plead facts; he can plead conclusions. [However], the conclusions must provide the defendant with at least minimal notice of the claim." *Jackson v. Marion County,* 66 F.3d 151, 153–54 (7th Cir.1995). The issue we review is whether "sufficient facts [have been] pleaded to allow the district court to understand the gravamen of the plaintiff's complaint." *Doherty v. City of Chicago,* 75 F.3d 318, 326 (7th Cir.1996).

*Kyle v. Morton High School,* 144 F.3d 448, 454–55 (7th Cir.1998); *See also Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir.1998).

### II. DEFENDANTS CALLAHAN AND MULLENS' MOTION TO DISMISS

Plaintiffs have sued Defendants Callahan and Mullen under 42 U.S.C. § 1983 for violation of Samuel's Fourteenth Amend-

ment rights. The Fourteenth Amendment violations against Callahan and Mullen are based on alleged use of excessive force and denial of medical care while in custody (Count I), and false arrest (Count II). Besides State law claims of assault and battery against these Defendants (Count IV), Plaintiffs *inter alia* also allege, in Count V, that Defendants Callahan and Mullen engaged in willful and wanton conduct or omissions of duties in violation of State law.

Defendants Callahan and Mullen have moved to dismiss or strike the following claims and counts: (1) the claims of "conspiracy" and denial of "equal protection" as stated in paragraph one of Count I, (2) the claims against Callahan and Mullen in Counts I and II based on the Fourteenth Amendment, and (3) Count V on the basis that Illinois does not recognize a claim for "willful and wanton" conduct. (*See* Def. Mot. at 2.)

### A. Claims Based on Conspiracy and Equal Protection

#### 1. Conspiracy Claim

Plaintiffs' Amended Complaint alleges that Callahan and Mullen conspired to deprive him of his constitutional rights. (Am.Compl.¶ 1.) The Seventh Circuit in *Kunik v. Racine County, Wisconsin,* 946 F.2d 1574 (7th Cir.1991), set forth the test for determining whether a complaint properly alleges a conspiracy:

There must be allegations that the defendants directed themselves toward an unconstitutional action by virtue of a mutual understanding. Even were such allegations to be made, they must further be supported by some factual allegations suggesting a 'meeting of the minds.'

*Id.* at 1580. *See Sparkman v. McFarlin,* 601 F.2d 261, 268 (7th Cir.1979) (*plurality*) (*en banc*). In *Kunik,* the court said that the term "meeting of the minds" does not provide much substantive direction. The court there, however, extracted from relevant case law, certain prerequisites to the existence of a conspiracy:

(1) A conspiracy requires an agreement;

(2) The agreement need not be overt, but if not, the alleged acts must be sufficient to raise the inference of mutual understanding;

(3) Acts performed together by the members of the conspiracy are adequate when they are unlikely to have been undertaken without an agreement;

(4) A whiff of the alleged conspirators' assent cannot await discovery but must be apparent in the complaint.

*Kunik,* 946 F.2d at 1580.

"A complaint inadequately alleges conspiracy when the facts it alleges are vague, conclusionary and include no overt acts reasonably related to the promotion of the alleged conspiracy." *Kunik,* 946 F.2d at 1580. *See Hansen v. Ahlgrimm,* 520 F.2d 768, 770 (7th Cir.1975). Defendants argue *inter alia* that the facts of the amended complaint do not meet the requirements set forth by *Kunik* for stating a conspiracy. The court disagrees with Defendant's positions.

The facts alleged in Plaintiffs' Amended Complaint are sufficient to allege the existence of a conspiracy. The Amended Complaint describes in detail, the actions of Defendants Callahan and Mullen which were undertaken together, and the alleged acts are sufficient to raise the inference of mutual understanding. Each alleged act was completed by both Defendants, together, and the acts were not of the types that would have been undertaken absent an agreement. Here, at this notice not fact pleading stage, and construing the allegations in the light most favorable to the Plaintiffs, the court finds that the alleged facts do contain a whiff of the alleged conspirators assent and support Plaintiffs' conspiracy allegation. Therefore, Defendants' Motion to Strike the allegation of "conspiracy" is hereby denied.

## 2. Equal Protection Claim

Plaintiff's amended complaint avers, in paragraph 1, that Defendants acted with intent to deny Mr. Samuel equal protection of the law. Defendants argue that Plaintiff's equal protection claim is insufficient as a matter of law.

██] Defendants' argument is well founded. "[T]he Equal Protection Clause has long been limited to instances of purposeful or invidious discrimination rather than erroneous or even arbitrary administration of state powers." *Shango v. Jurich,* 681 F.2d 1091, 1104 (7th Cir.1982). "A plaintiff 'must demonstrate intentional or purposeful discrimination' to show an equal protection violation." *Id.* at 1104 (*quoting Bloomenthal v. Lavelle,* 614 F.2d 1139, 1141 (7th Cir.1980) (*per curiam*)). "Discriminatory purpose implies more than intent as volition or intent as awareness of consequences." *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979). "It implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on an identifiable group." *Shango,* 681 F.2d at 1104.

██ Plaintiffs recognize, in their Response Brief, that an intentional or purposeful act of discrimination must be alleged in order to make out an equal protection violation claim, and Plaintiffs, by their own admission, have not properly stated such a claim. Rather, Plaintiffs seek to amend their Amended Complaint.

In support of their move to amend their equal protection claim, Plaintiffs allege only that Samuel is black while Callahan and Mullen are white. (See Pl.Resp. at 6.) However, even appending that allegation to the allegations already set forth in Plaintiffs' Amended Complaint would not meet the pleading standard set forth in *Shango* for an equal protection claim. The mere fact that Samuel is an African–American and Officers Mullen and Callahan are white does not evince that Defendants invidiously singled out him as an African–American for disparate treatment, nor that they selected their course of action at least in part for the purpose of causing its adverse effects on Mr. Samuel as an African–American. *See David K. v. Lane,* 839 F.2d 1265, 1271, 1272 (7th Cir.1988).

Accordingly, Defendants' Motion to Dismiss Plaintiffs' equal protection claim is hereby granted without leave to amend.

## B. Fourteenth Amendment Claims

### 1. Excessive Force

██ Plaintiffs have brought their excessive force claim under the Fourteenth Amendment. Defendants correctly argue, however, that in accordance with the Supreme Court's decision in *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), Plaintiffs' excessive force claim must be analyzed under the Fourth Amendment's reasonableness standard,[2] not the Fourteenth Amendment's substantive due process clause. "Where ... the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment...." *Id.* at 394, 109 S.Ct. 1865. The Court in *Graham* made explicit what had been made implicit in *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), which is that "all claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' ap-

**2.** The Fourth Amendment guarantees citizens the right "to be secure in their persons ... against unreasonable searches and seizures."

proach." *Graham*, 490 U.S. at 395, 109 S.Ct. at 1871. "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id.*

■ In defending their employment of the Fourteenth Amendment, Plaintiffs rely on the Supreme Court's decision in *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), in which the Court said that *Graham*

> does not hold that all constitutional claims relating to physically abusive government conduct must arise under ... the Fourth Amendment ...; rather, *Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.

*Id.* 523 U.S. 833, 118 S.Ct. at 1715. *See United States v. Lanier*, 520 U.S. 259, 272, n. 7, 117 S.Ct. 1219, 1228, n. 7, 137 L.Ed.2d 432 (1997) and "Substantive due process analysis is inappropriate ... if a claim is 'covered by' the Fourth Amendment." *Lewis*, 523 U.S. 833, 118 S.Ct. at 1715, 140 L.Ed.2d 1043. Plaintiffs allege that in the present action no search and seizure took place and none is alleged, and therefore, analysis under the Fourteenth Amendment is proper. This court disagrees.

A "seizure" triggering the Fourth Amendment's protections occurs when government actors have, "by means of physical force or show of authority, ... in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 1879, n. 16, 20 L.Ed.2d 889 (1968). Plaintiffs would have this court find that based on the fact that the word "seizure" does not appear in the Amended Complaint, their excessive force claim should be analyzed under the Fourteenth Amendment. A seizure, however, has been defined as a governmental termination of freedom of movement through means intentionally applied. *See Schaefer v. Goch*, 153 F.3d 793, 796 (7th Cir.1998). Herein, the allegations in the Amended Complaint, are sufficient to conclude that the police terminated Mr. Samuel's freedom of movement through means intentionally applied. Therefore, under *Graham v. Connor*, supra, the Fourth Amendment analysis traditionally applied to "seizures" would apply to Plaintiffs' claim for excessive force.

Based on the foregoing, Defendants' Motion to Dismiss Plaintiffs' excessive force claim under the Fourteenth Amendment is granted. Plaintiffs' are granted leave to amend to plead their excessive force claim pursuant to the Fourth Amendment

**2. False Arrest**

■ Defendants also contend that Plaintiffs' claim for false arrest must by analyzed under the Fourth Amendment. The Seventh Circuit in *Patton v. Przybylski*, 822 F.2d 697, 699 (7th Cir.1987), set forth the framework for analyzing a false arrest claim:

> [a]lthough an arrest is a deprivation of liberty and could in principle therefore be challenged under the Fourteenth Amendment without reference to the Fourth Amendment, the latter is a more specific regulation of arrests and searches and a plaintiff who cannot make a case under the Fourth Amendment will not be heard if he appeals to the principles of due process instead.... A false arrest falls squarely within the scope of the Fourth Amendment....

Thus, Plaintiffs' false arrest claim is analyzed under the reasonableness standard of the Fourth Amendment as opposed to the substantive due process standard of the Fourteenth Amendment.

Accordingly, Defendants' Motion to Dismiss Plaintiff's false arrest claim under the Fourteenth Amendment is granted. Plaintiffs are hereby granted leave to amend to plead their false arrest claim under the Fourth Amendment.

## C. Denial of Medical Care

█ Defendants contend that any claim that they denied medical care to Samuel should be analyzed under the Eighth Amendment's deliberate indifference standard, rather than under the Fourteenth Amendment alleged.

*Mathis v. Fairman,* 120 F.3d 88 (7th Cir.1997), set forth the applicable law on this issue. In *Mathis,* the Seventh Circuit pointed out (A) that claims by pretrial detainees that they were improperly denied medical care arise under the Fourteenth Amendment due process clause and (B) that the standard applied to such claims is identical to the Eighth Amendment standard applied to claims by convicted individuals:

A prison official violates the Eighth Amendment (which applies to persons who have been convicted) and the due process clause of the Fourteenth Amendment (which applies to pre-trial detainees like Mathis) when he is deliberately indifferent to a substantial risk of serious harm to an inmate, and a finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless.

*Mathis,* 120 F.3d at 91.

█ Consistent with applicable law, Plaintiffs have properly alleged under the Fourteenth Amendment their deliberate indifference/denial of medical care claim, regarding pre-trial detainee Samuel's medical needs. (See Am.(Plt.¶ 20). The Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment denial of medical care claim is, therefore, denied.

## D. Recognition of a Separate Cause of Action for Willful and Wanton Conduct

Count V of Plaintiffs' Amended Complaint is an action under Illinois law for Defendants' alleged willful and wanton conduct. Defendants move to dismiss on the ground that Illinois law does not recognize a separate cause of action for willful and wanton conduct.

█ The Supreme Court of Illinois has expressly ruled that under Illinois law "[t]here is no separate and independent tort of 'willful and wanton' misconduct." *See Mucklow v. John Marshall Law School* (1988), 176 Ill.App.3d 886, 895, 126 Ill.Dec. 314, 531 N.E.2d 941.

Count V of Plaintiffs' Amended Complaint is, therefore, dismissed.

## *CONCLUSION*

In view of the foregoing, Defendants' Motion to Dismiss Count I is denied as to Plaintiffs' conspiracy claim and granted as to Plaintiffs' equal protection claim. Defendants' Motion to Dismiss Counts I and II with respect to Plaintiffs' Fourteenth Amendment claims as to Plaintiff's claims of excessive force and false arrest is granted; however, Plaintiffs are hereby granted leave to amend the excessive force and unlawful arrest claims of Counts I and II consistent with the terms stated herein. Defendants' Motion to dismiss the Plaintiff's denial of medical care claim of Count I is denied. Defendants' Motion to Dismiss the Count V willful and wanton conduct claim is granted.